615 A.2d 350

COMMONWEALTH of Pennsylvania

v.

Steven SCHWARTZ, Appellant.

Superior Court of Pennsylvania.

Argued May 12, 1992.

Filed Oct. 20, 1992.

Steven A. Schwartz, pro se.

Mary M. Killinger, Executive Asst. Dist. Atty., Norristown, for Com., appellee.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment of sentence entered on December 8, 1987, by the Court of Common Pleas of Montgomery County. Subsequent to a jury trial, appellant was convicted of one count of criminal trespass, two counts of disorderly conduct and resisting arrest. On November 12, 1987, post-trial motions were denied with respect to criminal trespass and disorderly conduct, but granted with respect to resisting arrest. Appellant then received the following sentence on December 8, 1987: a two-year term of probation and a $1,000 fine on the charge of criminal trespass and a concurrent one-year term of probation on the charge of disorderly conduct.

The docket entries indicate that appellant filed a notice of appeal on December 31, 1987. In response to appellant's motion for a new trial and brief in support of such motion, the trial court filed an opinion on March 18, 1988. Appellant's counsel then filed a brief with this Court on May 6, 1988. Thereafter, on August 28, 1988, this Court granted Marc R. Steinberg's motion to withdraw as counsel for appellant. When appellant did not advise the Court of the name of his new counsel nor indicated he was proceeding *pro se,* we dismissed the case by per curiam order of February 15, 1989, for failure to file a brief.

On April 5, 1989, appellant filed an appeal to the Pennsylvania Supreme Court which was denied. Then, on December 8, 1989, appellant filed a *pro se* motion for reversal of convictions which was also denied. Appellant next filed a petition for post-conviction relief (PCRA). The Commonwealth successfully moved to dismiss appellant's PCRA petition and this Court affirmed the dismissal of appellant's PCRA petition by memorandum decision, No. 2299 Phila.1990, filed February 26, 1991. Finally, on October 30, 1991, this Court entered a per curiam order reinstating appellant's original appeal.

In addition to seeking reinstatement of his appeal, appellant also moved to reinstate the original appellate brief filed by Attorney Steinberg. On February 10, 1992, such motion was granted.

We now have before us on appellant's behalf: the original appellate brief filed May 7, 1988, which is incorporated by reference into the *pro se* briefs; one *pro se* brief dated December 23, 1991; another *pro se* brief dated January 9, 1992; and a *pro se* reply brief dated February 24, 1992.

We will consider both the original appellate brief and the *pro se* briefs since this is not a case of hybrid appellate representation. Where an appellant is represented by counsel, this Court has refused to entertain *pro se* briefs because of the administrative burdens and the likelihood for procedural delay and confusion. *Commonwealth v. Ellis*, 398 Pa.Super. 538, 581 A.2d 595 (1990) (*en banc*), *appeal granted* 528 Pa. 636, 598 A.2d 992 (1991). We held,

> [w]e will accept for filing *pro se* appellate briefs, but we will not review a *pro se* brief if a counseled brief has been filed, either before, simultaneously with, or after the *pro se*, due to the judicial confusion and delay that ensues.

*Id.*, 398 Pa.Super. at 550, 581 A.2d at 600. Normally, the prothonotary would send the *pro se* brief to appellant's counsel who should petition this Court to remand the case for evidentiary hearing if appellant alleges ineffectiveness of counsel or

an affirmative desire to be heard *pro se*. *Id.*, 398 Pa.Super. at 550, 581 A.2d at 600–601.

Instantly, however, this case differs since appellant's counsel was allowed to withdraw after the initial appellate process commenced; although we possess a counseled brief, appellant is not currently represented on appeal. Here, threat of double-filing and confusion of issues and arguments are absent since such decisions reside solely with appellant. Because we are not presented with the burdens and dangers that guided our decision in *Ellis*, we are not forced to follow the *Ellis* rule and, so, can entertain appellant's *pro se* briefs.

In addition, the issues that appellant raised in his *pro se* briefs are repetitive of those in the original appellate brief. Moreover, our decision in *Ellis* is currently being reviewed by the Supreme Court. We find, therefore, that it would be in the best interest of appellant and this Court to consider the issues in both the *pro se* and counseled briefs. Finally, we will address each of appellant's arguments despite his failure to brief all the issues included in the "Statement of Questions Involved" sections in his *pro se* briefs. This decision is based on appellant's attempt to incorporate the original appellate brief in his *pro se* briefs and the order of February 10, 1992, reinstating the original brief.

Appellant raises the following issues in his counseled brief and *pro se* briefs:

1. Whether the trial court erred by denying appellant's motion for discovery to examine the Jenkintown Borough Facilities.

2. Whether the trial court erred by allowing testimony regarding appellant's prior bad acts.

3. Whether the trial court erred by refusing to remedy a violation of Sequestration by Commonwealth witnesses.

4. Whether the trial court erred by refusing the admission of appellant's photographs.

5. Whether the trial court erred by refusing to remedy prejudicial remarks by the prosecutor.

6. Whether the trial court erred by allowing a door to be admitted into evidence and then allowing the door to go out with the jury.

7. Whether the trial court erred by improperly instructing the jury.

8. Whether the trial court erred by its determination that the evidence was sufficient to sustain the verdict, in conformity with the evidence, the weight of the evidence and the law.

Factually, this case centers around an occurrence at the residence of Susan and Bill Focht and Joanne Kalin on the night of September 20, 1986. As Mrs. Focht and Ms. Kalin were preparing to leave their home at 416 West Avenue in Jenkintown, Mrs. Focht unlocked the rear door. As Mrs. Focht waited for Ms. Kalin in the living room, she heard a loud "bang" on the metal part of the back door. Mrs. Focht then looked out the side window and she saw appellant Schwartz. By the time she got to the back door, appellant had opened it, had his foot inside and was yelling at Mrs. Focht to get Ms. Kalin. Mrs. Focht struggled against appellant and was finally able to close and bolt the door. Appellant then hit one of the panes of glass in the door and broke it. Mrs. Focht then called the police. When the police arrived, they found appellant sitting on a railing by the back door. After Mrs. Focht told the police that appellant was causing a disturbance and explained that he broke the door, one of the police officers attempted to handcuff him. Appellant struggled with the police and yelled obscenities at Mrs. Focht, but he was eventually cuffed and placed in a patrol car where he continued to scream. Appellant was then taken to the Jenkintown Borough Police Station where he began kicking the cell door. Thereafter, he was taken to the Montgomery County Correctional Facility where a medical technician evaluated his condition and took photographs of appellant. The technician referred him to Sacred Heart Hospital to receive medical clearance in order to enter the prison. Upon receiving clearance, appellant returned to the prison. Subsequently he was charged with criminal trespass, terroristic threats, loitering and prowling at nighttime, resisting arrest and disorderly conduct.

■ Appellant first contends that the trial court erred by denying his discovery request to inspect, photograph and videotape the offices and jail cells of the Jenkintown Borough Facilities. Rule 305(B)(2) of the Pennsylvania Rules of Criminal Procedure states that,

> [T]he Court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon showing that they are material to the preparation of the defendant, and that the request is reasonable: ... (d) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

Pa.R.Crim.P., Rule 305(B)(2), 42 Pa.C.S.A.

■ The statute bestows discretion upon the trial court to decide whether discovery should be allowed to further the interests of justice. Absent an abuse of such discretion, we will not disturb the lower court's ruling.

Appellant specifically identified the evidence that he sought to inspect as being the Jenkintown Borough Facilities; however, in the trial court's opinion, he did not establish that the inspection would be in the interests of justice. We agree.

In his counseled brief, appellant stated that he sought to show the bias of the police officers and their motivation for testifying that appellant resisted arrest.[1] Accordingly, the trial judge permitted appellant to testify at length on direct and cross-examination about the alleged brutality at the scene of the arrest. Additionally, cross-examination of one of the police officers regarding events at the police station was allowed because the testimony was a potential credibility issue. The lower court, however, correctly held that the layout of the station facilities did not go to the credibility of appellant or of the police officers.

Further, the trial court opined that the premises were not at issue. The statute limits the court to discovering items that

---

1. Appellant asserts that he was subjected to police brutality at the scene of the arrest and at the Jenkintown Facilities.

are material to preparation of the defense. Since the facilities were not at issue, inspection of them certainly was not material to appellant's case. Thus, the trial court was well within its discretion to refuse the discovery request.

Appellant next argues that the trial judge erred when he let in testimony of prior bad acts committed by appellant. Pennsylvania has established that the trial court has broad discretion in admitting or excluding evidence and such decision will only be overturned if there was abuse of that discretion. *Commonwealth v. Meadows,* 381 Pa.Super. 354, 553 A.2d 1006 (1989). Here, the trial court did not abuse its discretion in admitting evidence that showed that appellant made repeated harassing phone calls to Ms. Joanne Kalin for over a month prior to breaking into her house, the event upon which the charges were brought. Generally, evidence of prior bad acts is inadmissible unless it is a recognized exception and the need for it outweighs the potential prejudice. *Commonwealth v. Booth,* 291 Pa.Super. 278, 435 A.2d 1220 (1981). The recognized exceptions justifying admission of prior bad acts are those that tend to establish motive; intent; absence of mistake or accident; a common scheme, plan or design; or the identity of the person charged with the commission of the crime. *Id.*

In the case *sub judice,* the lower court stated, "the most compelling reason for the admission of the testimony ... is that it proves Defendant's motive ... in going to the Focht/Kalin residence and the reasons behind his conduct there." (Trial court opinion at 9–10.)[2] Thus, we will address this exception to prior bad acts evidence.

In order to be admissible under the motive exception, evidence of the prior bad acts "must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts or circumstances." *Commonwealth v. Mitchell,* 314 Pa.Super. 364, 367, 460 A.2d 1182, 1184 (1983), *quoting Commonwealth*

---

2. The trial court also held that the testimony met the requirements of the intent and common plan exceptions to prior bad acts.

*v. Schwartz,* 445 Pa. 515, 522, 285 A.2d 154, 158 (1971). Apparently, as appellant became angrier and more determined to contact Ms. Kalin, the more he realized that his attempts and threats were futile. The calls tended to show escalating anger of such intensity that would make somebody act and were admissible as tending to prove motive. *See Commonwealth v. Pacell,* 345 Pa.Super. 203, 208, 497 A.2d 1375, 1378 (1985). Thus, the earlier harassment did have probative value and was not, as appellant contends, "used to solely besmirch appellant's character." (Appellant's brief, 1/09/92, at 14.)

■ However, even if evidence is arguably admissible under the motive exception, the court must balance the need for the evidence against its potential prejudice in order to determine its admissibility. *Mitchell,* 314 Pa.Super. at 367, 460 A.2d at 1184 (citations omitted). In balancing the need for the evidence against the possible prejudice to the jury, the court is to look to the actual need for evidence of prior bad acts in light of the issues, the other evidence available to the prosecution and the strength or weakness of the prior bad acts evidence in supporting the issue. *Id.*

The trial court found that "[t]he prejudicial effect on the jury was minimal compared to the overwhelming value of this evidence to the jury in explaining Defendant's motive . . . on the evening [in question]." (Trial court opinion, at 11.) Applying the *Mitchell* test, the lower court stated that the evidence of the earlier harassment was probative of appellant's motive for going to Ms. Kalin's home and strongly supported the Commonwealth's contention that appellant intentionally broke into the residence. Thus, the decision to admit the evidence was not an abuse of discretion.

■ Appellant's next assignment of error is that his request for a mistrial based on a violation of a sequestration order was improperly denied. Prior to opening statements, appellant was granted an order of sequestration which prohibited Mrs. Focht and Ms. Kalin from discussing their testimony with anyone else. Ms. Kalin admitted that this order was violated when Mrs. Focht discussed her testimony with Ms. Kalin for

approximately twenty minutes. Defendant moved for a mis-
trial, but the trial court denied the motion.

 Absent a clear abuse of discretion, we will not disturb
a sequestration decision. *Commonwealth v. Albrecht,* 510 Pa.
603, 511 A.2d 764 (1986). Since we find no such abuse here,
we affirm the lower court's holding on this matter.

 Once a sequestration order is in effect and a
possible violation is brought to the court's attention, the trial
court must determine, as a question of fact, whether there has
been a violation and, if so, the remedy required. *Common-
wealth v. Stinnett,* 356 Pa.Super. 83, 514 A.2d 154 (1986). In
deciding whether to allow a witness who violates a sequestra-
tion order to testify, the trial court should consider the
seriousness of the violation, its impact on the testimony of the
witness, the probable impact on the outcome of the trial,
whether the witness intentionally disobeyed the order, and
whether the party calling the witness procured the disobedi-
ence. *Commonwealth v. Mokluk,* 298 Pa.Super. 360, 444 A.2d
1214 (1982).

Following this procedure and taking these factors into con-
sideration, the lower court conducted an *in camera* hearing of
Ms. Kalin's statements regarding her discussion with Mrs.
Focht about the latter's testimony. The trial court found that
the violation was unintentional, resulting from Mrs. Focht's
surprise that she was questioned about Ms. Kalin's relation-
ship with appellant. Thus, the court below concluded that
Mrs. Focht was not attempting to color Ms. Kalin's testimony.
Moreover, they reasoned that Ms. Kalin's testimony could not
have been affected since she must have already realized that
she would be questioned about her relationship with appellant.
Finally, the court held that this did not impact the outcome of
the trial since the jury was informed of the violation. The
lower court's decision regarding the sequestration violation
was thorough and well-reasoned and we affirm.

 The fourth assignment of error concerns the trial
court's refusal to admit photographs taken by the medical
technician at the Montgomery County Correctional Facility.

Admission of photographs is within the sound discretion of the trial court. *Commonwealth v. Nauman*, 345 Pa.Super. 457, 498 A.2d 913 (1985). As such, these decisions will not be overturned absent abuse of discretion. *Commonwealth v. Goriy*, 527 Pa. 98, 110, 588 A.2d 902, 908 (1991) (citations omitted).

▇ Photos will only be admitted if a proper foundation is laid. This can be done by having a witness testify that the pictures accurately and fairly depict what they purport to show. *Commonwealth v. Sinwell*, 311 Pa.Super. 419, 457 A.2d 957 (1983). Here, the medical technician who took the photographs explicitly stated that the photos in question did not "show the injuries that I saw." (N.T., 4/15/87, at 272.) At that point the trial court correctly refused to admit the photographs since appellant could not lay a proper foundation for them.

▇ Appellant next asserts that a new trial was required because the prosecution made a prejudicial remark during the course of examining appellant's investigator. The investigator went to the Focht/Kalin home and examined the door in question. The prosecution stated that he trespassed in doing so. Appellant argues that this statement cast him in a bad light before the jury; the remark suggested that he instructed the investigator to trespass or, at the least, condoned the action. Not every intemperate remark, however, will result in the granting of a new trial. *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985). This is especially true when, as here, the effect of the remark is neutralized by the court striking the remark and cautioning the jury to disregard the comment. Only remarks that unavoidably prejudice the jury by making them biased and hostile toward the defendant to the point that they cannot objectively render a fair verdict justify the grant of a new trial. *Id.* Since that was not the case below, we affirm the denial of a new trial.

▇ Appellant alleges that the lower court also erred when it denied appellant's motion for a mistrial that was prompted by the prosecution introducing as evidence the 416

West Avenue door which appellant broke. The trial court allowed the door to go out with the jury.

Appellant filed a motion for discovery, pursuant to Rule 305(B)(1), prior to the listing of the case for trial. This section, governing mandatory disclosures by the Commonwealth, states:

> (1) Mandatory: In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable permit the defendant's attorney to inspect and copy or photograph such items.

> \* \* \* \* \* \*

> (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence;

Pa.R.Crim.P., Rule 305(B)(1)(f), 42 Pa.C.S.A. The prosecution's failure to disclose the door, appellant argues, was grounds for a mistrial. We disagree.

■ Although appellant correctly discusses this Court's decision in *Commonwealth v. Thiel*, 323 Pa.Super. 92, 470 A.2d 145 (1983), the instant case so differs that the same result is not warranted. As we opined in *Thiel*, the Pennsylvania Supreme Court sought to expand discovery in criminal cases by passing the liberalized Criminal Procedure Rule 305. This codified the increasing realization that disclosure of relevant materials promotes proper administration of justice. *Id.* Generally, then, the Commonwealth should exercise the utmost good faith to disclose to defendant all material evidence in its possession when faced with a mandatory discovery request. *Id.*

The Court went on to state that "in cases where the prosecutor can reasonably predict possible defense strategies and evidence, he must also be held to reasonable anticipation of what evidence in his possession might be material in rebuttal." It noted, however, that the Commonwealth could

not be expected to anticipate the materiality of all possible rebuttal evidence. *Id.,* 323 Pa.Super. at 97, 470 A.2d at 148. Presently, that is the precise situation before us. When the trial court asked the prosecutor why he did not list the door in the discovery request, he replied that "this was in no way planned to be an exhibit until after the testimony of the defense private investigator." (R. at 424a, N.T. at 411.) Prosecution obviously did not anticipate that the defense would put the condition of the door at issue and argue that the panes broke when appellant merely knocked on the door.

In *Commonwealth v. Moose,* 529 Pa. 218, 236, 602 A.2d 1265, 1274 (1992), the Court articulated the concerns behind the criminal discovery rules when it held that "[t]rial by ambush is contrary to the spirit and letter of [Rule 305(B)(1) ] and cannot be condoned." The *Thiel* Court stated that "our court has condemned such gamesmanship in criminal prosecution." *Thiel,* 323 Pa.Super. at 100, 470 A.2d at 149. Instantly, the prosecution did not engage in any such gamesmanship and so, the trial court properly refused appellant's request for a mistrial.

Additionally, the trial court relied on our holding in *Commonwealth v. Gelormo,* 327 Pa.Super. 219, 475 A.2d 765 (1984), which said that when the defense and the prosecution have equal access to information, the Commonwealth will not be required to provide discovery of the information. *See also Commonwealth v. Romeri,* 314 Pa.Super. 279, 460 A.2d 1139 (1983) *cert. denied,* 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984); *Commonwealth v. Ryan,* 300 Pa.Super. 156, 446 A.2d 277 (1982) and *Commonwealth v. Gibson,* 271 Pa.Super. 499, 414 A.2d 364 (1979). Appellant, as the trial court noted, certainly had access to the door since his private investigator examined the door and then testified as to its condition. (Trial court opinion at 20.) We affirm the lower court's refusal to declare a mistrial.

Appellant also asserts that it was prejudicial error to allow the door to go out with the jury because the size of the door and the jingling bell on it accentuated its importance. Admission and/or exclusion is a matter squarely within the

discretion of the trial court. *Commonwealth v. Moore,* 389 Pa.Super. 473, 567 A.2d 701 (1989), *citing Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982). A trial court's ruling on admissibility will not be overturned absent an abuse of discretion. *Commonwealth v. Ferri,* 410 Pa.Super. 67, 78, 599 A.2d 208, 214 (1991), *citing Commonwealth v. Foy,* 394 Pa.Super. 442, 576 A.2d 366 (1990). In determining admissibility, the trial court should decide whether the evidence is relevant and, if so, whether its probative value is outweighed by its prejudicial impact. *Commonwealth v. Shain,* 324 Pa.Super. 456, 471 A.2d 1246 (1984). As we have stated,

> [e]vidence is relevant if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue or when it in some degree advances the inquiry and thus has probative value.

*Id.,* 324 Pa.Super. at 462–463, 471 A.2d at 1249 (1984) (citations omitted). The trial court here found that the evidence was probative of the defense's claim that when he merely rapped on the door, the glass pane broke. Further, appellant's private investigator testified that the glass in the door vibrated easily when touched because the frames were loose. Because of this testimony, the court below allowed the door to go out with the jury, so that they could examine it firsthand and make a more informed credibility decision.

In his reply brief, appellant suggests that no proper foundation was laid for this piece of physical evidence. Appellant apparently is trying to argue, although without citation to any supporting law, that the door was not authenticated. Real evidence is sufficiently authenticated if "evidence, direct or circumstantial, establishes a *reasonable* inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court." *Commonwealth v. Hudson,* 489 Pa. 620, 632, 414 A.2d 1381, 1387 (1980) (emphasis in the original.) This can be accomplished by establishing a continuous chain of custody. *See Commonwealth v. Melendez,* 326 Pa.Super. 531, 474 A.2d 617 (1984).

On rebuttal, the prosecution put Mrs. Focht on the stand. She testified that the door in question was the back door to

the 416 West Avenue residence and that the only work ever done on the door was to repair the pane that appellant broke. (N.T., 4/16/87, at 407.) It was well within the trial court's discretion to accept this testimony as authenticating the evidence. Thus, there is no merit to any of appellant's arguments regarding the admission of the door and we affirm the lower court's holding on this issue.

Appellant also takes issue with the trial court's charge to the jury. First, he points out that the judge refused to instruct the jury on justification as a defense to the crimes of criminal trespass and disorderly conduct. Appellant acknowledges, however, that this was correct with respect to criminal trespass since no evidence of justification was presented. Moreover, it was irrelevant with respect to resisting arrest, for which it was mainly proposed, because the court granted arrest of that judgment. Despite his acknowledgement, appellant persists in arguing that the court erred when it instructed the jury that "breaking into, if in fact you find that's what happened or any other effort to collect a debt other than through suits and so forth, is not a license to enter" (N.T., 4/16/87, at 470), but refused to read appellant's proposed charge on the defense of justification.

The Pennsylvania legislature has specifically defined the justification defense. 18 Pa.C.S.A. § 503. In order to be entitled to an instruction on justification as a defense to the crime charged, the actor must first offer evidence that he was faced with clear and imminent harm; that the actor could reasonably expect that his actions would be ineffective in avoiding greater harm; that there was no legal alternative which would be effective in abating the harm; and that the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue. *Commonwealth v. Capitolo*, 508 Pa. 372, 378, 498 A.2d 806, 809 (1985). Since appellant did not offer any such evidence, the lower court correctly refused his proposed instruction on justification.

■■■ The instruction given simply expanded upon the license element of the crime. A trial judge may express an issue in his own form, as long as the issue is fully and accurately presented to the jury for their consideration. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983). The trial judge's instruction on license to enter met this standard and we affirm.

■■■ Next, appellant contends that the court's definition of entry took the question of intent away from the jury. The court informed the jury that, "[a] defendant breaks into a place if he gains entry by force, breaking, intimidation, unauthorized opening not designed for human access. Passing an arm through a window is an entry under the law." (N.T., 4/16/87, at 470.) Indeed, this is the law in Pennsylvania. The first sentence of the charge comes from the statutory definition set forth at 18 Pa.S.C.A. § 3503. The second part is from this Court's holding in *Commonwealth v. Myers*, 223 Pa.Super. 75, 297 A.2d 151 (1972). This portion of the charge does not negate the court's earlier instruction that the jury must find that, "the Defendant broke in knowing he lacked a license or privilege, that is, permission or other lawful authority to do so." (N.T., 4/16/86, at 469.) In determining whether a jury instruction was sufficient, the charge should be viewed in its entirety. *Ohle*, 503 Pa. 566, 470 A.2d 61. When read as a whole it is clear that the jury was adequately instructed on the *mens rea* element of license. Appellant, however, argues that the trial judge informed the jury that they could not find a license in this case. In part of his twenty-four page charge the judge addresses the third element of criminal trespass, whether appellant broke into an occupied structure. He told the jury that,

> You must also keep into account that ... the occupied structure was not abandoned. You must keep into account that the premises were not at the time open to members of the public and that the Defendant did not reasonably believe that the owner of the premises would have permitted him to enter or to remain.

(N.T., 4/16/87, at 470.) Bearing in mind that the instructions should be read in their entirety, *Id.*, we do not find error. Previously, the lower court had charged the jury that they could only find appellant guilty if they determined that he broke into the premises, knowing that he lacked license to do so. The overall charge was detailed. It clearly outlined the jury's duties and the governing law, including the necessity of finding a knowing lack of license.

■■■ Appellant's final argument is that the evidence is insufficient to sustain the verdict and that the verdict is against the weight of the evidence. The standard of review in challenges to the sufficiency of the evidence is well settled in Pennsylvania.

> In evaluating this contention [*i.e.*, the defendant's challenge to the sufficiency of evidence], we [must] view the evidence in the light most favorable to the Commonwealth and, drawing all reasonable inferences therefrom favorable to the Commonwealth, determine if there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt.

*Commonwealth v. Carbone,* 524 Pa. 551, 553–4, 574 A.2d 584, 585 (1990). *See also Commonwealth v. Thomas,* 465 Pa. 442, 350 A.2d 847 (1976); *Commonwealth v. D'Angelo,* 401 Pa.Super. 409, 585 A.2d 525 (1991). With this as our standard of review, we find that appellant's arguments regarding the sufficiency of the evidence are without merit.

■■■ Appellant contends that the Commonwealth did not present any valid evidence to support an intent to enter. No evidence was presented that shows he smashed the window and thrust his arm through the broken pane, appellant argues. Evidence of this nature did not have to be presented to support a conviction of criminal trespass.

> A person commits an offense [of criminal trespass] if, knowing that he is not licensed or privileged to do so, he: (i) enters, gains entry by subterfuge or surreptitiously remains in any occupied structure or separately secured or occupied

portion thereof; or (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof. 18 Pa.C.S.A. § 3503.

The evidence, viewed in the light most favorable to the Commonwealth, showed a lack of license and an entry. Mrs. Focht testified that appellant was not invited to their residence on the evening in question, either by herself or Ms. Kalin. (N.T., 4/13/87, at 58.) This testimony is sufficient to show lack of permission to enter the premises. *See Commonwealth v. Tate,* 299 Pa.Super. 518, 445 A.2d 1250 (1982).

Mrs. Focht also stated that appellant punched the pane, causing the glass to fall on her. (N.T., 4/13/87, at 57.) We have defined entry to include passing an arm through a window. *Commonwealth v. Myers,* 223 Pa.Super. 75, 297 A.2d 151 (1972). Thus, the evidence certainly supported a conclusion that the appellant entered the premises without permission. Accordingly, we affirm the criminal trespass verdict.

 In his original appellate brief, appellant stated that the evidence was insufficient to sustain a conviction of disorderly conduct as a misdemeanor of the third degree. Although he concedes that the evidence would have supported a summary offense, he says the evidence did not show that he intended to cause substantial harm or serious inconvenience, a requirement for a misdemeanor conviction. Appellant conveniently neglected the part of the disorderly conduct statute which states that a person is guilty of a misdemeanor where he persists in disorderly conduct after reasonable warning or request to desist. 18 Pa.C.S.A. § 5503

When the police arrived at the 416 West Avenue residence, appellant was screaming at Mrs. Focht, using obscenities and calling her a liar. When the officers informed appellant he was under arrest, appellant began screaming at the police and continued yelling at Mrs. Focht. One of the officers testified that he warned appellant to be quiet, but appellant persisted in screaming. (N.T., 4/14/87, at 159–160.) This testimony was evidence that could sustain a conviction of disorderly conduct pursuant to the statute.

274

■ Although appellant claims that the verdict was against the weight of the evidence, he does not address this in the argument section of his brief. Thus, we deem the argument waived.

■ Even if this claim had not been waived, it is without merit. The decision to grant a new trial based on a challenge to the weight of the evidence is within the sound discretion of the trial court. *Thompson v. City of Philadelphia*, 507 Pa. 592, 598, 493 A.2d 669, 672 (1985); *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111 (1991). It is well established that where a jury's verdict is so contrary to the evidence as to shock one's sense of justice, then the trial court should award a new trial on the basis that a verdict is against the weight of the evidence. *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152, 1155–56 (1986); *Murray*, 408 Pa.Super. at 438, 597 A.2d at 113. An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but may not substitute its judgment for that of the lower court.[3] *Thompson*, 507 Pa. at 592, 493 A.2d at 669.

In appellant's case, we do not find an abuse of discretion that warrants the grant of a new trial. At trial, the Commonwealth elicited reliable and more than adequate evidence to prove that appellant entered the Focht/Kalin residence without permission and that he was guilty of disorderly conduct. Mrs. Focht, owner of the 416 West Avenue residence and an eyewitness to the incident, testified that he was there without permission and that he broke the glass pane in the door. The police officers, as well as Mrs. Focht, testified that appellant was screaming at them and using obscenities. Therefore, we find that it was not an abuse of discretion to refuse appellant a new trial on the basis that the verdict was against the weight

---

**3.** In *Murray,* this Court affirmed its right and duty to review a trial court's refusal to grant a new trial on the basis that the verdict is against the weight of the evidence. *Contra, Murray,* concurring and dissenting opinion by Olszewski, J. (appellate review of weight of the evidence challenges is at variance with the fact-finding province of the jury and not properly the subject of appellate review).

of the evidence required for criminal trespass and disorderly conduct.

For the reasons stated above, we affirm the judgment of sentence.

WIEAND, J., concurs in the result.