## Commonwealth v. Ross

C.P. of Blair County, no. 2004 CR 2038.

*David Gorman, district attorney,* for Commonwealth.
*Theodore J. Krol* and *Phillip Robertson,* for defendant.

KOPRIVA, *J.,* April 13, 2005—The Commonwealth filed their motion for admission of bad acts evidence December 8, 2004. A hearing was held on the motion February 10, 2005. The parties were given 10 days to file supporting briefs. The court received defendant's memorandum in opposition of the Commonwealth's motion to permit bad acts evidence February 18, 2005, which was followed by the Commonwealth's brief in support of its motion in limine seeking admission of prior bad acts on or about March 1, 2005.

The defendant is charged with one count of criminal homicide, one count of aggravated assault, one count false imprisonment, one count unlawful restraint, one count involuntary deviate sexual intercourse, and other charges[1] based on events which occurred on or about June 27, 2004, resulting in the death of Tina Miller.

In the present case, the Commonwealth seeks to have the defendant's prior assaults on four other women admitted for the limited purpose of proving the defendant's intent, motive, identity, and common scheme, plan or design in committing the offenses.

## DISCUSSION

The law pertaining to evidence of criminal conduct, other than that for which a defendant is being tried, was summarized by the Pennsylvania Supreme Court in *Commonwealth v. Billa,* 521 Pa. 168, 177, 555 A.2d 835, 841 (1989), as follows:

"Evidence of a defendant's distinct crimes are not *generally* admissible against a defendant *solely* to show his

---

1. Simple assault and indecent assault by forcible compulsion.

bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not *generally* proof of the commission of another. *Commonwealth v. Lark,* 518 Pa. 290, [302,] 543 A.2d 491, 497 (1988). However, this general proscription against admission of a defendant's distinct criminal acts is subject to numerous exceptions where special circumstances exist which render such evidence relevant for some legitimate evidentiary reason, and not merely to prejudice the defendant by showing him to be a person of bad character. Some of the exceptions that this court has recognized in the past as legitimate bases for admitting evidence of a defendant's distinct crimes include (but are not limited to): (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called 'res gestae' exception). See *Commonwealth v. Lark, supra* 518 Pa. at 302, 543 A.2d at 497 and cases cited therein, *and Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987)."

The Pennsylvania Supreme Court went on to explain in *Billa* that prior bad acts, though admissible, must be accompanied by cautionary instructions to the jury. *Billa* at 179-80, 555 A.2d at 843.

The above was codified in 1998 as set forth in Rule 404(b) of the Pennsylvania Rules of Evidence. The basic principles of Pa.R.E. §404 are consistent with prior Pennsylvania case law. Pa.R.E. §404, comments.

A trial court has broad discretion in admitting or excluding evidence, and such a decision will only be overturned if there is an abuse of such discretion. *Commonwealth v. Schwartz,* 419 Pa. Super. 251, 263, 615 A.2d 350, 356 (1992), citing *Commonwealth v. Meadows,* 381 Pa. Super. 354, 553 A.2d 1006 (1989). However, fairness dictates that courts should be ever vigilant to prevent the introduction of prior criminal acts under the guise that it is being offered to serve some purpose other than to demonstrate the defendant's propensity to commit the crime charged. *Commonwealth v. Spruill,* 480 Pa. 601, 607, 391 A.2d 1048, 1051 (1978). We give analysis to each exception the Commonwealth raises.

## INTENT, MOTIVE AND MALICE

The Commonwealth argues that since defendant has been charged with criminal homicide, including first-degree murder, his state of mind is clearly at issue.[2] The Commonwealth goes on to aver that evidence of the defendant's other crimes are relevant to proving Tina Miller's death did not occur without his inten-

2. 18 Pa.C.S. §2502(a) *Murder of the first degree* states: "A criminal homicide constitutes murder of the first degree when it is committed by an *intentional* killing." (emphasis added)

tional conduct. They further argue in each prior assault, the victims indicate they were in fear of being both physically and/or sexually assaulted by the defendant; particularly when they were unreceptive to his sexual desires, and if these prior assaults are admitted they will show defendant's malice, motive and intent in killing Tina Miller.

The Commonwealth analogizes this case to *Commonwealth v. Billa, supra.* In *Billa,* the court concluded evidence of a prior crime was relevant and had important evidentiary value to establish motive/intent in murdering Maria Rodriquez and to negate appellant's claim that her death was an accident. Before the Rodriquez murder, the appellant accosted another young woman, Florence Morales. He took her gold chains and forced her to a nearby vacant lot where he raped her. Afterward, appellant strangled Florence until she lost consciousness. Florence did not die. Evidence of the assault on Florence Morales was admissible in appellant's trial for murdering Maria Rodriquez. Appellant stabbed Maria to death and took her jewelry. The evidence was admissible on the issues of motive/intent and accident despite the dissimilarities between the cases; (1) appellant knew Maria, and wanted a relationship with her, but he did not know Florence; (2) Florence, and not Maria, was abducted; (3) Florence was accosted in public, but Maria was killed in her own home; (4) appellant raped Florence, but he was not charged with sexually assaulting Maria; (5) appellant strangled Florence but stabbed Maria; (6) Maria died, but Florence did not.

The Commonwealth argues that just as in *Billa,* the defendant's assaults have strong evidentiary value in

proving just why Tina Miller died, and the defendant's intent in killing her.

Defendant argues the prior bad acts alleged, in the instant case, do not rise to the level of "logical connections" that case law mandates. In support of its position, defendant cites many cases to distinguish the present facts from cases in which prior bad acts *were admitted* to prove intent, motive and malice. Defendant cites the Superior Court ruling in *Schwartz, supra* at 263, 615 A.2d at 356 which sets the standard that in order for prior bad acts to be admissible under the *motive* exception, evidence of such acts "must give sufficient ground to believe that the crime currently being considered grew out of, or was in any way caused by, the prior set of facts or circumstances."

In *Schwartz,* the Superior Court found that the trial court did not abuse its discretion when it admitted evidence that showed that appellant made repeated harassing phone calls to the victim for over a month before breaking into her house, for the purpose of proving *motive.* Defendant argues the *Schwartz* case demonstrates a logical connection, unlike the present facts alleged by the Commonwealth.[3]

The Superior Court explains the admissibility of evidence under the intent and motive exception in *Commonwealth v. Camperson,* 417 Pa. Super. 280, 285, 612 A.2d 482, 484 (1992), and states the standard for admissibility:

---

3. The trial court in *Schwartz* held that the evidence was also admissible under the *intent* and *common plan* exceptions. The Superior Court only gives analysis as to the *motive* exception and does not reach any analysis of any other exceptions based upon judicial restraint.

"There must be a logical connection between the prior incident and the crime for which the accused is being tried. Important factors to be considered in making this determination include the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake or lack of required intent."

In the case sub judice, we note many similarities between the prior bad acts of the defendant and the killing of Tina Miller: *(a)* defendant was drinking in three out of four assaults on previous women, defendant was also allegedly drinking the night of the Miller death; *(b)* defendant choked or used force against the throat of three of the four women, Tina Miller's body had hemorrhages to the neck; *(c)* sexual assault was attempted on one victim and perpetrated against three of the four women, sexual assault was carried out upon Tina Miller's body; *(d)* four of the four women expressed fear of being killed by the defendant, circumstantial evidence can be argued to allege Miller was in fear of being killed while the assault was being carried out; *(e)* physical assault to the face and head was committed against three of the four women, Tina Miller had hemorrhages to the face and head; *(f)* use or attempted penetration with a foreign object was carried out against three of the four women, Miller was penetrated with a foreign object; and finally, *(g)* all the victims were in their mid 20s to early 30s, including Tina Miller.

The similarities between the proffered prior bad acts of the defendant and the circumstances that surround the death of Tina Miller we find are sufficiently similar to

establish a logical connection required by law that would allow the evidence of these bad acts to be admitted to prove the defendant's intent, motive, and malice toward the victim.

## IDENTITY [4]

The Commonwealth argues in the case sub judice that the defendant indicates he was dropped off with the victim and he left her alive and unharmed. Therefore defendant raises identity as an issue in this case. They go on to propound that the evidence of defendant's other assaults on women makes this possibility highly unlikely, and proof of defendant's identity as the perpetrator relevant. The Commonwealth reasons that Tina Miller died as a result of asphyxiation after being raped and physically assaulted, and Miller was with a man who had repeatedly sexually and physically assaulted other women. Given this evidence, the Commonwealth argues it is totally unreasonable to conclude the defendant actually left Miller alive and someone else then killed her.

The Commonwealth maintains that the doctrine of chances supports admission of the evidence as it leads to the conclusion that the defendant is the one who committed the murder. The doctrine of chances was used to explain the accident exception in *Commonwealth v. Donahue,* 519 Pa. 532, 541-42, 543, 549 A.2d 121, 126, 127 (1988) (emphasis in original), and states:

"To prove intent, . . . as a generic notion of criminal volition or willfulness, . . . *[t]he argument here is purely*

4. The identity exception is normally used in conjunction with another exception as a supplement. *U.S. v. Woods,* 484 F.2d 127, 134 (4th Cir. 1973).

*from the point of view of the doctrine of chances*—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. . . . [T]he mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that *the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them.*

"*In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal,* i.e., *criminal, intent accompanying such an act . . . .*

"II Wigmore, *On Evidence,* §302 pp. 241, 245, 246 (Chadbourn Rev. 1979). (emphasis added)"

Defendant argues only if an accused commits other crimes using a *distinct modus operandi* can such evidence be introduced to prove identity. To support their argument, defendant cites *Commonwealth v. Shively,* 492 Pa. 411, 415, 424 A.2d 1257, 1259 (1981) (emphasis in original) citing McCormick on Evidence §190 (1972 2d ed.) and states:

"[E]vidence of prior crimes is admissible:

"to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork

of the accused. Here, *much more is demanded than the mere repeated commission of crimes of the same class,* such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature."*

In *Shively,* the Pennsylvania Supreme Court, by plurality decision, found two sexual assaults were insufficiently similar because few of the details were the same. However, two dissenting justices opined that the circumstances surrounding the crimes at issue in *Shively* were sufficiently similar, and the time frame, considered in light of appellee's incarceration, sufficiently small, that appellee's conviction of the first offense was admissible at his trial for the second.[5]

Defendant argues he is accused of murder by means of asphyxiation and/or drowning. The victim was beaten, her arms and mouth duct taped. She was then sexually violated by an unknown object. Defendant cites no signature with *distinct modus operandi* ties these instant facts to the prior bad act. Indeed, defendant maintains that the Commonwealth's prior bad act witnesses will not testify to anything that was done to them that would amount to something so unusual and distinct to be like a

---

5. In *Shively,* six days after appellee's release from prison where he was serving a three-year term for forcible sodomy, he was again accused of forcibly raping and sodomizing another young woman. Both victims were around 20 years old; both were in or entering their automobiles at the time they were approached by the perpetrator; both victims were forced with deadly weapons to accompany the assailant to a secluded country area; and both victims were ordered to assume crouching positions which exposed their genetalia from the rear for the assailant. *Id.* at 417, 424 A.2d at 1260 (dissenting opinion).

signature of the defendant, likewise identifiable in the facts of the instant case.

The question is whether similarities, in the prior bad acts, lead to the conclusion that there is a logical connection between the crimes. *Commonwealth v. Hughes,* 521 Pa. 423, 458, 555 A.2d 1264, 1283 (1989). We note, these similarities are not confined to insignificant details which would likely be common elements regardless of who had committed the crimes. *Id.* at 459, 555 A.2d at 1283.

According to the evidence proffered by the Commonwealth, the defendant committed prior assaults on women that consisted of sexual assault, physical assault, sexual penetration/attempted penetration with a foreign object, and the defendant was drinking at the time of most of these assaults. Tina Miller was the victim of sexual assault, physical assault, sexual penetration with a foreign object and defendant was allegedly drinking the night of Miller's death.

This court finds the similarities between the prior bad acts of the defendant and the killing of Tina Miller are of significant and substantial detail to allow the Commonwealth to present testimony of defendant's prior bad acts to attempt to prove the identity of who committed the death of Miller.

## COMMON SCHEME, PLAN OR DESIGN

Finally, the Commonwealth argues that evidence of the other crimes reveals that all offenses, including Tina Miller's murder, are part of a common scheme, plan or design.

The Commonwealth points this court to *Commonwealth v. Elliott,* 549 Pa. 132, 700 A.2d 1243 (1997) in which the Supreme Court of Pennsylvania held that three prior assaults on women were admissible in the murder trial of the defendant, based upon common scheme, plan or design.

In *Elliott,* the appellant went to a nightclub where he met a 27-year-old white female. The victim accompanied the appellant to a friend's house. The victim was found dead the next morning, in the friend's apartment, and it was determined that the manner of death was strangulation, performed manually, and with a cord. The autopsy revealed injuries to the woman's vagina and anus, indicating forced sexual penetration.

At trial, three other women testified concerning prior, unrelated sexual and physical assaults inflicted upon them by the appellant. Each woman was white and in their 20s. They were each attacked by appellant in the early morning hours, and all had similar violence inflicted upon them. On appeal, the court held that the trial court had properly admitted the testimony of the women due to the fact that the three prior assaults were sufficiently similar to the attack in appellant's murder trial: "all [were] white women in their 20s. They were all attacked in the early morning hours after finding themselves alone with appellant. Each of the assaults had sexual overtones. Each of the women were choked or beaten, or both. Given the close similarities between these assaults, we cannot conclude that the trial court abused its discretion in admitting the testimony of [the women] to show common scheme, plan, or design. See *Commonwealth v. Miller,* 541 Pa. 531, 548, 664 A.2d 1310, 1318 (1995) (evidence

that appellant lured other victims of similar race and weight into his car, took them to remote areas to force sex upon them, beat them in a similar manner, and killed or attempted to kill them admissible to prove common scheme, plan, or design), *cert denied,* 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996); see also, *Commonwealth v. May,* 540 Pa. 237, 247-49, 656 A.2d 1335, 1340-41 (1995)." *Elliott,* 549 Pa. 132, 700 A.2d at 1250.

When ruling on the admissibility of evidence under the common plan exception, the trial court must examine the details and surrounding circumstances of each criminal event to assure that the evidence reveals conduct which is distinctive and so nearly identical as to become the signature of the defendant. *Commonwealth v. Frank,* 395 Pa. Super. 412, 421, 577 A.2d 609, 614 (1990), *appeal denied,* 526 Pa. 629, 584 A.2d 312 (1990). The habits or patterns of action or conduct undertaken by the defendant, as well as the time, place and types of victims typically chosen are all factors relevant to a finding that the criminal conduct is distinctive. *Id.*

The Commonwealth further points this court to *Commonwealth v. Newman,* 528 Pa. 393, 598 A.2d 275 (1991). In *Newman* the Pennsylvania Supreme Court analyzed whether two separate sexual assaults were part of a common design so that they could be tried together. The court concluded the offenses in the case which were 18 months apart were not too remote to be part of a common plan. *Id.* The court reaffirmed their holding in *Shively, supra,* and stated remoteness in time is but another factor to be considered in determining whether evidence of prior crime tends to show the same person committed both offenses. *Newman* at 400, 598 A.2d at 279.

In *Commonwealth v. Ardinger,* 839 A.2d 1143 (Pa. Super. 2003), the Superior Court explained that the rule governing the admission of prior bad acts is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. *Id.* at 1145. "It encompasses both prior crimes and prior wrongs and acts, the latter of which, by their nature, often lack 'definitive proof.'" *Id.*

In *Ardinger* prior to his trial for involuntary deviate sexual intercourse, sexual and indecent assault, the Commonwealth filed a motion in limine seeking admittance of evidence regarding a prior incident wherein the defendant had fondled another child, in which charges were pending in another state. The trial court found that the two incidents were sufficiently similar so as to constitute a common plan but denied the motion in limine, finding that the prejudicial effect outweighed the probative value of the prior assault.

The Superior Court agreed with the trial court's conclusion that the two incidents were similar enough to constitute a common scheme, plan or design. However, the court remanded the case in order for the trial court to more thoroughly analyze whether the admission of the evidence would outweigh its potential for prejudice:

"We note in this case, where the evidence sought to be admitted did not concern a prior conviction, the Commonwealth did not seek to merely bring in a witness to describe the pending charges. Rather, in its offer of proof the Commonwealth asserted that the victim . . . would testify. In addition, the Commonwealth claimed it would offer the testimony of [the other child's] mother. These witnesses will be available to the jury so their credibility can be judged and they will be subject to cross-examina-

tion which can include questions which will enable the jury to know that the charges against appellee in Maryland have not yet resulted in a conviction." *Id.* at 1146.

After review of the existing case law, we determine, the prior bad acts and the circumstances surrounding Tina Miller's death, which were allegedly committed by the defendant, are sufficiently similar and distinct to point toward the fact that the same person committed all of the assaults. This court is constrained by the present status of case law to allow the Commonwealth to present testimony from the women regarding the defendant's prior bad acts which evidence a common scheme, plan or design. Furthermore, as required, the women will be subject to cross-examination which will allow the jury to assess each woman's credibility and protect the defendant's interests.

## PROBATIVE VALUE VERSES PREJUDICIAL IMPACT

Having determined the Commonwealth's proffered evidence meets the threshold questions of admissibility, we note, as stated earlier, other crimes, wrongs, or acts evidence may only be admitted upon a showing that the probative value of the evidence outweighs its potential for prejudice. Pa.R.E. §404(b)(3). McCormick on evidence states:

"[M]ost recent authority recognizes that the problem is not merely one of pigeonholing, but of classifying and then balancing. In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the

commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficiency of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility." *West's Pennsylvania Practice,* Pennsylvania Evidence, §404-9(b) citing, McCormick, Evidence §190 p. 811 (4th ed. 1992).

Evidence in a criminal trial offered by the prosecution will be prejudicial to the defendant. *Commonwealth v. Peer,* 454 Pa. Super. 109, 120, 684 A.2d 1077, 1083 (1996). If mere prejudice were the standard, practically all evidence could reasonably be excluded. *Id.* "For this reason, the test for admissibility is whether the challenged evidence is so *unfairly* prejudicial that its inflammatory nature makes its probative value de minimis." *Id.* (emphasis in original)

Limiting or cautionary instructions may reduce the prejudicial impact enough to permit the use of other crimes evidence. *Commonwealth v. Bronshtein,* 547 Pa. 460, 691 A.2d 907 (1997). Courts can also minimize prejudice by tempering the manner in which the prosecution refers to the uncharged conduct. *Commonwealth v. Marchand,* 452 Pa. Super. 625, 682 A.2d 841 (1996).

The prosecution argues the evidence of defendant's other crimes is relevant and highly probative on a number of issues in this case. They go on to maintain that the need for this evidence is great due to the fact that there are no eyewitnesses to Tina Miller's death.

The defendant avers that each of the alleged bad acts would require a trial within a trial on each of the allegations. They further aver that one witness has a child with

the defendant and they are in a dispute over custody. The defendant also maintains that another witness is a heavy cocaine user. Finally, the defendant states in rebuttal there are several ex-girlfriends of the defendant which would come forward to offer their testimony that the defendant always treated them well with no physical abuse.

This court finds the prior bad acts evidence is more probative then prejudicial in three of the four instances, Berardinelli, Maloney and Levine because: *(a)* of the similarities between the crimes; *(b)* there was a relatively short time lapse between all of the prior bad acts, with the oldest one being perpetrated in 1996 and the most recent bad act initiated three months before Tina Miller's death; *(c)* there are no witnesses to Miller's death; *(d)* the women all knew the defendant and could identify him as the person who committed the bad acts against them *(e)* this court can give limiting instructions regarding the use of the prior bad act evidence; and *(f)* the women will be subject to cross-examination in which the jury will be able to decide themselves how much credibility to assess to each woman's story.

However, Bott's testimony must be precluded regarding her assault, which was allegedly carried out by the defendant, because she cannot identify who assaulted her in her dark bedroom.[6] Therefore, Bott's testimony would be more prejudicial then probative under the circumstances to the defendant.

We remain cognizant that each prior bad act incident will require testimony and cross-examination as required by present case law. The admission of such evidence will

---

6. The defendant did not plead guilty but rather entered a plea of nolo contendere.

require trial management to maintain relevance and efficiency. At this point, defendant provides no law supporting his claim that admission of prior bad acts of a defendant opens the door for admission of any prior "good" acts done by a defendant.

In light of the forgoing we enter the following:

## ORDER

And now, April 13, 2005, it is ordered, directed and decreed,

(1) The Commonwealth's motion in limine is granted in part. Elizabeth Ann Berardinelli, Laura Jane Maloney, and Deborah A. Levine shall be permitted to testify regarding the prior bad acts which were allegedly committed against them by the defendant, for the limited purpose of proving the defendant's intent, motive, identity, common scheme, plan or design.

(2) The Commonwealth's motion in limine is denied in part. The prior bad act testimony of Wendy Sue Bott is inadmissible evidence.

(3) A pretrial conference is set for *Tuesday, May 10, 2005 at 1:30 p.m. in courtroom no. 1.*