J-S56012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MIGUEL ANGEL LANDRAU-MELENDEZ, | |
| Appellant | No. 2035 MDA 2015 |

Appeal from the Judgment of Sentence Entered June 17, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000286-2014

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:        **FILED SEPTEMBER 16, 2016**

Appellant, Miguel Angel Landrau-Melendez, appeals from the judgment of sentence of 21 months' to 6 years' incarceration, imposed on June 17, 2015, after a jury convicted him of aggravated harassment by a prisoner, 18 Pa.C.S. § 2703.1.  We affirm.

Appellant's conviction stemmed from evidence that he threw a cup of urine on another inmate at the Lebanon County Prison.  On appeal, Appellant challenges the sufficiency and weight of the evidence to sustain his conviction.  We have examined the certified record, the briefs of the parties, and the applicable law.  We have also reviewed the October 21, 2015 opinion, drafted by the Honorable Bradford H. Charles of the Lebanon

_____

[*] Former Justice specially assigned to the Superior Court.

County Court of Common Pleas, which explains Judge Charles' rationale for denying Appellant's post-sentence motion in which Appellant raised his sufficiency and weight-of-the-evidence claims. We conclude that Judge Charles' well-reasoned opinion accurately disposes of those two issues. Accordingly, we adopt Judge Charles' October 21, 2015 decision as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/2016

# IN THE COURT OF COMMON PLEAS LEBANON COUNTY PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF : NO. CP-38-CR-2086-2014
PENNSYLVANIA :
:
v. :
:
MIGUEL LANDRAU-MELENDEZ :

## APPEARANCES

Megan Ryland-Tanner, Esquire    For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S
OFFICE

Elizabeth Judd, Esquire    For Miguel Landrau-Melendez
PUBLIC DEFENDER'S OFFICE

## OPINION BY CHARLES, J., October 21, 2015

While incarcerated in the Lebanon County Prison, the Defendant threw a cup of urine at and onto another inmate. He then sent a note to the victim stating: "Don't press charges. Please don't be a bitch. Don't f*** with my time." Based upon the above evidence and more, a jury found the Defendant guilty of Aggravated Harassment by a Prisoner. After we sentenced the Defendant to 21 months to 6 years in a state correctional facility, the Defendant challenged his conviction by alleging that the jury's verdict was against the weight of evidence and was not based on sufficient evidence. We write this Opinion to affirm our judgment of sentence.

1

## I.   FACTS

On March 16, 2014, Marq Garloff (hereafter "GARLOFF") was an inmate housed in Cell Block 3 of the Lebanon County Correctional Facility located in the City of Lebanon. (N.T. 5). During the morning hours of March 16, 2014, GARLOFF was lying on his bed which was the bottom of the bunk bed. (N.T. 6). He heard the doors to the cells opening. He then observed Miguel Landrau-Melendez (hereafter "DEFENDANT") standing in front of his cell gates. (N.T. 6). DEFENDANT was holding a white Styrofoam cup. DEFENDANT threw the contents of the white Styrofoam cup at GARLOFF. (N.T. 10).

GARLOFF testified that the contents of the cup contained urine. He stated that when DEFENDANT threw the urine at him, it landed on him, his towel, his bed, his lip and his hair. (N.T. 6). When questioned how he knew the liquid was urine, GARLOFF testified that some of the urine landed on his lip and he was able to taste it. In addition, when it landed on his blanket, it turned the blanket yellow at the wet spots. (N.T. 6). GARLOFF stated that his towel was hanging on top of the bottom front of his bunk.

At some point either the day of or the day after the incident with the urine, GARLOFF received a note from DEFENDANT. (N.T. 5). GARLOFF stated that the note had been delivered to him by someone other than DEFENDANT. (N.T. 9).

GARLOFF testified that when someone is in prison and is labeled a snitch, it becomes problematic for the inmate to function through the prison

2

system. In addition there is always the potential that the inmate could be physically harmed. (N.T. 24). Because of the above, and because GARLOFF was being threatened by DEFENDANT and half the block and because of fear and intimidation, GARLOFF wrote a handwritten statement stating that he did not want to press charges against DEFENDANT. GARLOFF provided the handwritten statement to DEFENDANT. (N.T. 16-18). DEFENDANT specifically told GARLOFF to write that the urine did not get on him and that he would not be pressing charges. (N.T. 19).

GARLOFF did testify under subpoena. However, throughout the investigation, he cooperated with the Pennsylvania State Police and never once asked that the charges be withdrawn. (N.T. 25). When introduced as evidence, GARLOFF was able to identify the towel as the one he had used for many months. He also indicated that his towel had a rip in it and had some drawings on it. (N.T. 7-8; Exh. 4).

Bradley Starry (hereafter "STARRY") also testified at trial. He is employed as a supervisor of the inmates at the Lebanon County Correctional Facility. On March 16, 2014, STARRY was assigned to the block three control station. (N.T. 25).

At some point in time, STARRY was approached by an inmate who told him about urine being thrown. (N.T. 25). STARRY entered GARLOFF'S cell and questioned him about the liquid on GARLOFF's prison issue. (N.T. 26, 30). At the time GARLOFF and another inmate were present inside the cell. (N.T. 30).

3

After questioning GARLOFF, STARRY left the cell block and went to central control to view the video surveillance tape. (N.T. 26). STARRY testified that each cell block has their own video surveillance. The video equipment is set up so that if it is not downloaded and copied, it overrides itself several days later. (N.T. 30-31). STARRY stated that he did not burn a copy of the video footage and ultimately the video footage was overridden and no longer existed. (N.T. 31).

STARRY testified that when he viewed the video, he started from a point where the inmate approached him and reported the incident and backtracked from there. In so doing, STARRY was able to observe DEFENDANT in front of GARLOFF's cell. (N.T. 32). Upon observing this, STARRY returned to GARLOFF's cell and collected various items including GARLOFF's prison uniform, sheets, towel, and anything else that appeared to be wet. (N.T. 32).

STARRY then pulled DEFENDANT out of the block at which time he said to DEFENDANT that he already knows why he is out here. DEFENDANT's response was "you have my DNA on file, you're going to have to send it to the lab to verify it." (N.T. 34). STARRY did not tell DEFENDANT about the liquid substance or any of the observations he had made. (N.T. 34).

Captain Michael Ott who is employed as Captain of Security at the Lebanon County Correctional Facility also testified at trial. Captain Ott testified that as part of his investigation, he learned that GARLOFF had

4

been provided with a note that said "Don't press charges. Please don't be a bitch. Don't f___ with my time. Please, I'm trying to go home. Thank you, Miguel." (Exh. 5; N.T. 38). When Captain Ott spoke with DEFENDANT, DEFENDANT acknowledged that he wrote the note. (N.T. 38).

During trial, a Stipulation of Facts was entered by counsel. Among other things, this stipulation indicated the following:

(1) Forensic scientists were able to detect no urine on the red prison uniform; however urine was present on the white towel. The sheets were not analyzed.

(2) All items were collected by Lebanon County Correctional Facility Officers on March 16, 2014.

(3) All items were turned over to the Pennsylvania State Police on April 6, 2014 and Troopers from the Pennsylvania State Police transported the red uniform worn by GARLOFF to the Pennsylvania State Police Crimes Laboratory on April 30, 2014.

(4) On August 28, 2014, Pennsylvania State Troopers transported the linens to the Pennsylvania State Police Crimes Laboratory for testing. The linens included the white sheets and the towel. (Exh. 1; N.T. 39-42).

## II.    DISCUSSION

### A.    WEIGHT AND SUFFICIENCY OF EVIDENCE

Because DEFENDANT's sufficiency and weight of the evidence arguments are related, we will address them together. That being said, we

5

recognize that there is a distinction between challenges to sufficiency and lack of weight of evidence. That distinction was laid out in *Commonwealth v. Whiteman*, 485 A.2d 459 (Pa.Super. 1984):

> A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on the grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge....The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.

*Id.* at 462, *citing Commonwealth v. Taylor*, 471 A.2d 1228, 1229-1230 (Pa.Super. 1984). If there is insufficient evidence to support a jury's verdict, the double jeopardy clause of the Fifth Amendment to the United States Constitution precludes retrial. *See Commonwealth v. Whiteman*, *supra*, *(citing Hudson v. Louisiana*, 450 U.S. 40, 67 L.Ed.2d 30 (S.Ct. 1981)). On the other hand, "a new trial is a proper remedy when the verdict is found to be against the weight of the evidence." *Id.* at 461.

When reviewing a sufficiency of the evidence claim, we apply a two-step inquiry. First, we consider all of the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the fact-finder could have based the verdict. *Commonwealth v. Walker*, 874 A.2d 667, 677 (Pa.Super. 2005). Second, we must ask whether that evidence, along with all reasonable inferences to be drawn therefrom, was

6

sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Azim*, 459 A.2d 1244, 1246 (Pa.Super. 1983).

In passing upon the credibility of witnesses and the weight to be afforded the evidence produced, the jury is at liberty to believe all, part, or none of the evidence. *Commonwealth v. Price*, 610 A.2d 488 (Pa.Super. 1992). We are not to engage in post-verdict credibility discussions, nor are we permitted to substitute our opinion regarding the facts for that of the jury. *Commonwealth v. Brown*, 486 A.2d 441 (Pa.Super. 1984). If the fact-finder could have reasonably determined from the evidence that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Hopkins*, 747 A.2d 910, 913-14 (Pa.Super. 2000).

The standard to be applied when assessing a challenge to the weight of evidence imposes a "heavy burden" upon the defendant. *Commonwealth v. Staton*, 1998 WL 1297080 (C.P. Philadelphia 1998). A jury's verdict will be overturned only when it is "so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Schwartz*, 615 A.2d 350, 361 (Pa.Super. 1992). This standard has been described as follows: "When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa.Super. 2004) (*citations omitted*).

7

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Simmons,* 662 A.2d 621, 630 (Pa. 1995). The function of the fact finder is to pass on the credibility of witnesses and determine the weight to be accorded to a particular piece of evidence. *Id.*

In this case, the Commonwealth established the following inculpatory information:

(1)　The video surveillance tape observed by STARRY showed DEFENDANT standing in front of GARLOFF's cell block prior to the incident.

(2)　GARLOFF identified DEFENDANT as the person who threw the cup of urine on him.

(3)　As indicated by the Stipulation of facts, GARLOFF's towel tested positive for urine.

(4)　DEFENDANT threatened and intimidated GARLOFF into writing a statement that the urine did not get on him.　What purpose would DEFENDANT have to threaten GARLOFF and have GARLOFF write such a statement if DEFENDANT was not even involved in this incident?

(4)　DEFENDANT acknowledged to Captain Ott that he provided GARLOFF with a note that read "Don't press charges. Please don't be a bitch. Don't f___ with my time. Please, I'm trying to go home.

8

Thank you, Miguel." Once again, why would DEFENDANT have even written this note to GARLOFF if he was innocent of any wrongdoing?

Based on the above information and more, we believe that the jury possessed more than enough evidence to find DEFENDANT guilty of the crimes charged. Moreover, we cannot say that the jury's verdict was so "shocking" as to be against the weight of evidence. Accordingly, the Post-Sentence Motions filed by DEFENDANT based upon weight and sufficiency of evidence will be denied.