J-S62020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MIGUEL ANGEL LANDRAU-MELENDEZ | |
| Appellant | No. 661 MDA 2017 |

Appeal from the PCRA Order March 28, 2017
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0002086-2014

BEFORE:  STABILE, J., MOULTON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MOULTON, J.:          **FILED NOVEMBER 22, 2017**

Miguel Angel Landrau-Melendez appeals from the March 28, 2017 order entered in the Lebanon County Court of Common Pleas denying his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. We affirm.

The opinion prepared for direct appeal by the Honorable Bradford H. Charles set forth a detailed factual history, which we adopt and incorporate herein.  *See* Opinion, 10/21/15, at 2-5.  On May 7, 2015, a jury convicted Landrau-Melendez of aggravated harassment by a prisoner, 18 Pa.C.S. § 2703.1,[1] based on evidence that he threw a cup of urine on another inmate.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court convicted Landrau-Melendez of harassment, 18 Pa.C.S. § 2709, which, for sentencing purposes, merged with the other conviction.

On June 17, 2015, the trial court sentenced Landrau-Melendez to 21 to 72 months' incarceration on the conviction for aggravated harassment by a prisoner. On November 18, 2015, Landrau-Melendez timely appealed to this Court. On September 16, 2016, we affirmed his judgment of sentence.

On June 20, 2016, Landrau-Melendez, acting *pro se*, filed the instant PCRA petition. On August 5, 2016, Landrau-Melendez, through appointed counsel, filed an amended PCRA petition. On March 23, 2017, the trial court held a hearing on the petition. On March 29, 2017, the trial court denied the petition. On April 13, 2017, Landrau-Melendez timely filed an appeal.

Landrau-Melendez raises seven issues on appeal:

1. Whether Trial Counsel was ineffective for failing to take into account [Landrau-Melendez]'s comments on selecting the Jury and who Landrau-Melendez wanted and did not want on the Jury?

2. Whether Trial Counsel was ineffective for failing to allow [Landrau-Melendez] to testify at trial after he stated his desire to do so?

3. Whether Trial Counsel was ineffective for failing to call the cellmate of the victim . . . as a witness. Said witness would have aided in [Landrau-Melendez]'s defense?

4. Whether Trial Counsel was ineffective for failing to request and use [Landrau-Melendez]'s misconduct report. Said report would have aided in [Landrau-Melendez]'s defense?

5. Whether Trial Counsel was ineffective for failing to adequately cross-examine . . . Captain [Ott] during cross-examination. [Landrau-Melendez] had requested Trial Counsel to question him on where and how the interview took place and also how he obtained the letter that [Landrau-Melendez] allegedly wrote?

6. Whether Trial Counsel was ineffective for failing to subpoena a handwriting expert to prove that [Landrau-Melendez] did not write the confession letter?

7. Whether the Trial Court erred when it appointed Attorney Elizabeth Judd, after she was found to be ineffective in another case where she represented [Landrau-Melendez.]

Landrau-Melendez's Br. at 4-5.

Our standard of review from the denial of PCRA relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011). We will not disturb the PCRA court's factual findings "unless there is no support for [those] findings in the certified record." *Commonwealth v. Melendez-Negron*, 123 A.3d 1087, 1090 (Pa.Super. 2015).

All but the last of Landrau-Melendez's claims asserts trial counsel ineffectiveness. To prevail on ineffective assistance of counsel claims, "[the PCRA petitioner] must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) [the petitioner] suffered prejudice because of counsel's action or inaction." *Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011). "The law presumes counsel was effective." *Commonwealth v. Miner*, 44 A.3d 684, 687 (Pa.Super. 2012). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to

- 3 -

meet any of these prongs." ***Commonwealth v. Williams***, 980 A.2d 510, 520 (Pa. 2009).

First, Landrau-Melendez argues that his counsel at jury selection, Nicholas J. Sidelnick, Esquire,[2] "was ineffective for failing to listen to [his] requests and direction regarding the selection of his jury." Landrau-Melendez's Br. at 10. Landrau-Melendez claims that he expressed concerns to counsel about the racial makeup of his jury and that counsel said there was little he could do because "almost all the jury that come[s] over here is like white, in the middle, old persons." ***Id.*** at 9 (quoting N.T., 3/23/17, at 9).

The trial court concluded that Landrau-Melendez's claim lacked merit chiefly because the court found that Landrau-Melendez never raised an issue regarding jury composition with trial counsel. Opinion, 6/2/17, at 6 ("1925(a) Op."). The trial court also observed that "it is not unusual for Lebanon County juries to be predominantly Caucasian" based on the county's demographics. ***Id.***

To the extent that Landrau-Melendez is claiming that counsel should have objected on the basis that the jury panel was not a fair cross-section of

---

[2] Landrau-Melendez was represented by the public defender through his direct appeal. While Landrau-Melendez was primarily represented by Elizabeth Judd, Esquire, he was counseled at jury selection by Attorney Sidelnick, another member of the public defender's office. N.T., 3/23/17, at 28.

the community,[3] Landrau-Melendez presented no evidence that would support such a claim. Further, counsel did not recall Landrau-Melendez raising any discussions or concerns during the jury selection process and recalled telling other defendants that there is little he could do to change the racial makeup of the jury pool other than tell clients to "write down any particular people that they don't want in the jury." N.T., 3/23/17, at 30. Counsel also testified that if there had been an issue with the racial makeup of the jury, he would have objected to preserve that issue. *See id.* at 32-33. Under these circumstances, Landrau-Melendez failed to demonstrate that trial counsel lacked a reasonable basis for not objecting during jury selection. Accordingly, the trial court did not err in dismissing this claim.

Next, Landrau-Melendez argues that his trial counsel, Elizabeth Judd, Esquire, was ineffective for failing to allow him to testify on his own behalf. According to Landrau-Melendez, he told trial counsel that he wanted to testify. Landrau-Melendez asserts that he told the trial court he did not want to testify in his own defense "[b]ecause [he] thought [he] was doing the right thing at the moment" by following trial counsel's advice not to testify. Landrau-Melendez's Br. at 15.

_____

[3] To prevail on such a challenge, a defendant must show that "1) the group allegedly excluded is a distinctive group in the community; 2) representation of this group in the pool from which juries are selected is unfair and unreasonable in relation to the number of such persons in the community; and 3) the under-representation is due to the systematic exclusion of the group in the jury selection process." *Commonwealth v. Lopez*, 739 A.2d 485, 495 (Pa. 1999) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Our Court has stated:

[T]he decision to testify on one's own behalf:

is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for "failing to call the appellant to the stand," [the appellant] must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf.

[**Commonwealth v. Thomas**, 783 A.2d 328,] 334 [Pa.Super. 2001)]. "Counsel is not ineffective where counsel's decision to not call the defendant was reasonable." **Commonwealth v. Breisch**, 719 A.3d 352, 355 (Pa.Super. 1998).

**Commonwealth v. Todd**, 820 A.2d 707, 711 (Pa.Super. 2003).

Here, the trial court colloquied Landrau-Melendez on his right to testify and ensured his decision not to do so was voluntary. N.T., 5/7/15, at 48-49. Under these circumstances, we agree with the trial court's conclusion that trial counsel did not interfere with Landrau-Melendez's right to testify in his own.

Next, Landrau-Melendez argues that trial counsel was ineffective for failing to call the victim's cellmate, Bryan Bennett, as a witness at trial. According to Landrau-Melendez, "Bennett's testimony would have been very crucial as to what occurred at the time of alleged incident. . . . [and h]ad [t]rial [c]ounsel called [] Bennett to testify at trial, the [j]ury would have been able to determine that [Landrau-Melendez] did not commit such acts." Landrau-Melendez's Br. at 21.

To establish counsel's ineffectiveness for failing to call a potential witness, a petitioner must show that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. To demonstrate . . . prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012) (internal citations and some quotations marks omitted).

The trial court dismissed this claim because Attorney Judd testified that Landrau-Melendez had admitted his guilt to her and, had Bennett witnessed the incident, Attorney Judd "could have legitimately believed that [] Bennett would tell the truth and describe what [Landrau-Melendez] himself admitted doing." 1925(a) Op. at 10.

We conclude that Landrau-Melendez's claim is meritless. Trial counsel testified that she and Landrau-Melendez had discussed Bennett passing the note to the victim, but that Landrau-Melendez "did not bring to [her] attention] a witness that he wanted subpoenaed and brought to trial." N.T., 3/23/17, at 37. Further, Landrau-Melendez did not establish that Bennett was available or willing to testify.

Next, Landrau-Melendez argues that trial counsel was ineffective for failing to introduce a misconduct report[4] from the Lebanon County Correctional Facility regarding the incident. According to Landrau-Melendez, because the report did not disclose that Landrau-Melendez admitted to the offense or that there was any direct evidence linking Landrau-Melendez to the offense, the report would have supported his defense.

The trial court concluded that counsel had a reasonable basis for not introducing the misconduct report because, even though the report lacked any confession, "[t]here were many more things negative than positive in the report." 1925(a) Op. at 11. We agree.

At the PCRA hearing, Attorney Judd testified that while misconduct reports may sometimes help a defendant, she did not believe that this report was helpful because it portrayed Landrau-Melendez as uncooperative and combative. N.T., 3/23/17, at 37. Attorney Judd further stated that the report was unhelpful because it disclosed that when corrections officers confronted Landrau-Melendez, he told them "you would have to test the urine, you have my DNA." *Id.* at 38. Attorney Judd stated that she was "relieved when the report wasn't brought up because there were more things that were negative for him than positive." *Id.* at 38. Given these issues with the misconduct report, we agree with the trial court that Attorney Judd had a reasonable basis for not introducing it at trial.

_____

[4] Landrau-Melendez did not attach a copy of the report to his PCRA petition or his brief, nor did he introduce the report at his PCRA hearing.

Next, Landrau-Melendez argues that trial counsel was ineffective because she inadequately cross-examined Captain Michael Lee Ott of the Lebanon County Correctional Facility. According to Landrau-Melendez, he asked Attorney Judd to cross-examine Captain Ott about (1) "being how that chain command that the letter got to the victim," and (2) who was at the interview, "to try to poke hole in the interview." Landrau-Melendez's Br at 28 (quoting N.T., 3/23/17, at 22). Landrau-Melendez asserts that Attorney Judd had no reasonable basis not to cross-examine Captain Ott.

The trial court rejected this claim, concluding not only that it "did not understand what it was [Landrau-Melendez] wanted to ask Captain Ott," but also that Landrau-Melendez presented "no evidence . . . that any answers that Captain Ott could have offered would somehow have been helpful." 1925(a) Op. at 12. Further, the trial court noted that Attorney Judd was aware that Captain Ott held information damaging to Landrau-Melendez's case and, as a result, Attorney Judd "believed that the best strategy in dealing with Captain Ott was to ask as few questions as possible." *Id.* Thus, Attorney Judd elected not to cross-examine Captain Ott more extensively to avoid the release of damaging information which, under the circumstances, was not ineffective assistance. *Cf. Commonwealth v. Showers*, 681 A.2d 746, 753-54 (Pa.Super. 1996) (concluding that decision to limit cross-examination of Commonwealth's forensic psychiatrist was reasonable because "an extended cross-examination might have allowed [the expert] to restate his opinion

regarding the deceased's risk of suicide"). Under these circumstances, we conclude that the trial court correctly dismissed this claim.

Next, Landrau-Melendez argues that trial counsel was ineffective for failing to subpoena a handwriting expert witness to prove that he did not write the note the victim received.

The trial court dismissed found this claim meritless, largely because Landrau-Melendez told Attorney Judd that he had written the letter. At the PCRA hearing, trial counsel testified that Landrau-Melendez told her that he had written the note that was given to the victim. N.T., 3/23/17, at 40. Trial counsel also testified that this informed her decision not to subpoena a handwriting expert because she "believed it would be unethical to get an expert" after learning that information. *Id.* at 41. Because Landrau-Melendez admitted to trial counsel that he wrote the letter, the trial court did not err in concluding that this claim was meritless.

Finally, Landrau-Melendez argues that the trial court erred in appointing Attorney Judd as trial counsel because Attorney Judd had provided ineffective assistance to Landrau-Melendez in a different case. According to Landrau-Melendez, because "Attorney Judd was previously found to be ineffective on [his] behalf, [he] believes that it was not judicially fit to have that same ineffective counsel appointed to another one of [his] cases."

The trial court concluded that this claim was meritless because Landrau-Melendez "never filed a motion with the Court to remove Attorney Judd. . . . [and] failed to express any concern verbally about Attorney Judd's

representation of him." 1925(a) Op. at 13. In addition, the trial court found that Attorney Judd acknowledged that she had missed a filing deadline for a petition for allowance of appeal in Landrau-Melendez's other case. *Id.* The trial court also found that when Attorney Judd disclosed this mistake to Landrau-Melendez and informed him that he could obtain another attorney in this case, Landrau-Melendez expressed confidence and satisfaction with her representation. *Id.*

Despite being told that he could obtain another attorney, Landrau-Melendez never filed a motion to remove Attorney Judd. He raised this issue for the first time in his PCRA petition. Because Landrau-Melendez could have raised this issue before the trial court, we conclude that Landrau-Melendez has waived this claim. *See* 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2017

Circulated 09/23/2016 12:68 RM

IN THE COURT OF COMMON PLEAS LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF : NO. CP-38-CR-2086-2014
PENNSYLVANIA :
    :
    v. :
    :
MIGUEL LANDRAU-MELENDEZ :

APPEARANCES

Megan Ryland-Tanner, Esquire    For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S
OFFICE

Elizabeth Judd, Esquire    For Miguel Landrau-Melendez
PUBLIC DEFENDER'S OFFICE

## OPINION BY CHARLES, J., October 21, 2015

While incarcerated in the Lebanon County Prison, the Defendant threw a cup of urine at and onto another inmate. He then sent a note to the victim stating: "Don't press charges. Please don't be a bitch. Don't f*** with my time." Based upon the above evidence and more, a jury found the Defendant guilty of Aggravated Harassment by a Prisoner. After we sentenced the Defendant to 21 months to 6 years in a state correctional facility, the Defendant challenged his conviction by alleging that the jury's verdict was against the weight of evidence and was not based on sufficient evidence. We write this Opinion to affirm our judgment of sentence.

1

## I. FACTS

On March 16, 2014, Marq Garloff (hereafter "GARLOFF") was an inmate housed in Cell Block 3 of the Lebanon County Correctional Facility located in the City of Lebanon. (N.T. 5). During the morning hours of March 16, 2014, GARLOFF was lying on his bed which was the bottom of the bunk bed. (N.T. 6). He heard the doors to the cells opening. He then observed Miguel Landrau-Melendez (hereafter "DEFENDANT") standing in front of his cell gates. (N.T. 6). DEFENDANT was holding a white Styrofoam cup. DEFENDANT threw the contents of the white Styrofoam cup at GARLOFF. (N.T. 10).

GARLOFF testified that the contents of the cup contained urine. He stated that when DEFENDANT threw the urine at him, it landed on him, his towel, his bed, his lip and his hair. (N.T. 6). When questioned how he knew the liquid was urine, GARLOFF testified that some of the urine landed on his lip and he was able to taste it. In addition, when it landed on his blanket, it turned the blanket yellow at the wet spots. (N.T. 6). GARLOFF stated that his towel was hanging on top of the bottom front of his bunk.

At some point either the day of or the day after the incident with the urine, GARLOFF received a note from DEFENDANT. (N.T. 5). GARLOFF stated that the note had been delivered to him by someone other than DEFENDANT. (N.T. 9).

GARLOFF testified that when someone is in prison and is labeled a snitch, it becomes problematic for the inmate to function through the prison

2

system. In addition there is always the potential that the inmate could be physically harmed. (N.T. 24). Because of the above, and because GARLOFF was being threatened by DEFENDANT and half the block and because of fear and intimidation, GARLOFF wrote a handwritten statement stating that he did not want to press charges against DEFENDANT. GARLOFF provided the handwritten statement to DEFENDANT. (N.T. 16-18). DEFENDANT specifically told GARLOFF to write that the urine did not get on him and that he would not be pressing charges. (N.T. 19).

GARLOFF did testify under subpoena. However, throughout the investigation, he cooperated with the Pennsylvania State Police and never once asked that the charges be withdrawn. (N.T. 25). When introduced as evidence, GARLOFF was able to identify the towel as the one he had used for many months. He also indicated that his towel had a rip in it and had some drawings on it. (N.T. 7-8; Exh. 4).

Bradley Starry (hereafter "STARRY") also testified at trial. He is employed as a supervisor of the inmates at the Lebanon County Correctional Facility. On March 16, 2014, STARRY was assigned to the block three control station. (N.T. 25).

At some point in time, STARRY was approached by an inmate who told him about urine being thrown. (N.T. 25). STARRY entered GARLOFF'S cell and questioned him about the liquid on GARLOFF's prison issue. (N.T. 26, 30). At the time GARLOFF and another inmate were present inside the cell. (N.T. 30).

3

After questioning GARLOFF, STARRY left the cell block and went to central control to view the video surveillance tape. (N.T. 26). STARRY testified that each cell block has their own video surveillance. The video equipment is set up so that if it is not downloaded and copied, it overrides itself several days later. (N.T. 30-31). STARRY stated that he did not burn a copy of the video footage and ultimately the video footage was overridden and no longer existed. (N.T. 31).

STARRY testified that when he viewed the video, he started from a point where the inmate approached him and reported the incident and backtracked from there. In so doing, STARRY was able to observe DEFENDANT in front of GARLOFF's cell. (N.T. 32). Upon observing this, STARRY returned to GARLOFF's cell and collected various items including GARLOFF's prison uniform, sheets, towel, and anything else that appeared to be wet. (N.T. 32).

STARRY then pulled DEFENDANT out of the block at which time he said to DEFENDANT that he already knows why he is out here. DEFENDANT's response was "you have my DNA on file, you're going to have to send it to the lab to verify it." (N.T. 34). STARRY did not tell DEFENDANT about the liquid substance or any of the observations he had made. (N.T. 34).

Captain Michael Ott who is employed as Captain of Security at the Lebanon County Correctional Facility also testified at trial. Captain Ott testified that as part of his investigation, he learned that GARLOFF had

4

been provided with a note that said "Don't press charges. Please don't be a bitch. Don't f___ with my time. Please, I'm trying to go home. Thank you, Miguel." (Exh. 5; N.T. 38). When Captain Ott spoke with DEFENDANT, DEFENDANT acknowledged that he wrote the note. (N.T. 38).

During trial, a Stipulation of Facts was entered by counsel. Among other things, this stipulation indicated the following:

(1)   Forensic scientists were able to detect no urine on the red prison uniform; however urine was present on the white towel. The sheets were not analyzed.

(2)   All items were collected by Lebanon County Correctional Facility Officers on March 16, 2014.

(3)   All items were turned over to the Pennsylvania State Police on April 6, 2014 and Troopers from the Pennsylvania State Police transported the red uniform worn by GARLOFF to the Pennsylvania State Police Crimes Laboratory on April 30, 2014.

(4)   On August 28, 2014, Pennsylvania State Troopers transported the linens to the Pennsylvania State Police Crimes Laboratory for testing. The linens included the white sheets and the towel. (Exh. 1; N.T. 39-42).

## II.   DISCUSSION

### A.   WEIGHT AND SUFFICIENCY OF EVIDENCE

Because DEFENDANT's sufficiency and weight of the evidence arguments are related, we will address them together. That being said, we

5

recognize that there is a distinction between challenges to sufficiency and lack of weight of evidence. That distinction was laid out in *Commonwealth v. Whiteman*, 485 A.2d 459 (Pa.Super. 1984):

> A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on the grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge....The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.

*Id.* at 462, *citing Commonwealth v. Taylor*, 471 A.2d 1228, 1229-1230 (Pa.Super. 1984). If there is insufficient evidence to support a jury's verdict, the double jeopardy clause of the Fifth Amendment to the United States Constitution precludes retrial. *See Commonwealth v. Whiteman, supra, (citing Hudson v. Louisiana*, 450 U.S. 40, 67 L.Ed.2d 30 (S.Ct. 1981)). On the other hand, "a new trial is a proper remedy when the verdict is found to be against the weight of the evidence." *Id.* at 461.

When reviewing a sufficiency of the evidence claim, we apply a two-step inquiry. First, we consider all of the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the fact-finder could have based the verdict. *Commonwealth v. Walker*, 874 A.2d 667, 677 (Pa.Super. 2005). Second, we must ask whether that evidence, along with all reasonable inferences to be drawn therefrom, was

6

sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Azim*, 459 A.2d 1244, 1246 (Pa.Super. 1983).

In passing upon the credibility of witnesses and the weight to be afforded the evidence produced, the jury is at liberty to believe all, part, or none of the evidence. *Commonwealth v. Price*, 610 A.2d 488 (Pa.Super. 1992). We are not to engage in post-verdict credibility discussions, nor are we permitted to substitute our opinion regarding the facts for that of the jury. *Commonwealth v. Brown*, 486 A.2d 441 (Pa.Super. 1984). If the fact-finder could have reasonably determined from the evidence that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Hopkins*, 747 A.2d 910, 913-14 (Pa.Super. 2000).

The standard to be applied when assessing a challenge to the weight of evidence imposes a "heavy burden" upon the defendant. *Commonwealth v. Staton*, 1998 WL 1297080 (C.P. Philadelphia 1998). A jury's verdict will be overturned only when it is "so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Schwartz*, 615 A.2d 350, 361 (Pa.Super. 1992). This standard has been described as follows: "When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa.Super. 2004) *(citations omitted)*.

7

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Simmons,* 662 A.2d 621, 630 (Pa. 1995). The function of the fact finder is to pass on the credibility of witnesses and determine the weight to be accorded to a particular piece of evidence. *Id.*

In this case, the Commonwealth established the following inculpatory information:

(1)   The video surveillance tape observed by STARRY showed DEFENDANT standing in front of GARLOFF's cell block prior to the incident.

(2)   GARLOFF identified DEFENDANT as the person who threw the cup of urine on him.

(3)   As indicated by the Stipulation of facts, GARLOFF's towel tested positive for urine.

(4)   DEFENDANT threatened and intimidated GARLOFF into writing a statement that the urine did not get on him.   What purpose would DEFENDANT have to threaten GARLOFF and have GARLOFF write such a statement if DEFENDANT was not even involved in this incident?

(4)   DEFENDANT acknowledged to Captain Ott that he provided GARLOFF with a note that read "Don't press charges. Please don't be a bitch. Don't f___ with my time. Please, I'm trying to go home.

8

Thank you, Miguel." Once again, why would DEFENDANT have even written this note to GARLOFF if he was innocent of any wrongdoing?

Based on the above information and more, we believe that the jury possessed more than enough evidence to find DEFENDANT guilty of the crimes charged. Moreover, we cannot say that the jury's verdict was so "shocking" as to be against the weight of evidence. Accordingly, the Post-Sentence Motions filed by DEFENDANT based upon weight and sufficiency of evidence will be denied.