J-A11043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY MICHAEL CASTELLO | : | |
| | : | |
| Appellant | : | No. 1266 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 30, 2024
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000190-2023

BEFORE: MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: JULY 14, 2025**

Appellant, Anthony Michael Castello, appeals from the judgment of sentence entered in the Union County Court of Common Pleas on August 30, 2024. Appellant's counsel has filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967). After review, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The facts and procedural history are as follows: On May 4, 2023, two Pennsylvania State Police troopers responded to a report of a suspicious male in a parking lot attempting to gain entry into parked cars. The troopers received additional information that a male individual was rolling around on the ground in that parking lot. The troopers located Appellant who was rolling

_____

[*] Former Justice specially assigned to the Superior Court.

around in the roadway, yelling, grunting, and foaming at the mouth. Appellant failed to comply with verbal demands and the troopers suspected he was under the influence of a controlled substance. Appellant was tased, but the taser had no effect on him. After several minutes, a third officer arrived at the scene and they attempted to hold down Appellant's arms and legs. After a physical struggle lasting approximately three minutes, the troopers took Appellant into custody. Appellant was taken to Evangelical Hospital and sedated because of his significant intoxication and uncontrollable behavior. One of the arresting officers, Trooper Tyler Arbogast, spent five days in the hospital following the struggle due to an injury to his right hand.

Appellant was charged with one count each of resisting arrest, disorderly conduct, public drunkenness, criminal mischief, and harassment.[1] Appellant was convicted on all counts on June 12, 2024, following a jury trial. Appellant filed a motion for post-verdict relief on June 17, 2024. On June 28, 2024, Appellant's trial counsel filed a motion to withdraw. Appellant was sentenced on August 29, 2024, to nine to twenty-four months' incarceration. On that same day, a hearing was held on his post-verdict motion. On August 30, 2024, the trial court permitted counsel to withdraw and denied Appellant's motion for post-verdict relief.

---

[1] 18 Pa.C.S.A. §§ 6104, 5503(a)(1), 5505, 3304(a)(5), 2709(a)(1).

On September 4, 2024, Appellant timely filed a notice of appeal. On September 23, 2024, he filed a *pro se* statement of errors pursuant to Pa.R.A.P. 1925(b) raising issues in fourteen (14) enumerated paragraphs. Within several of the issues was a longer list of complaints of error. **See Pro Se** 1925(b) Statement, 9/23/25, at 1-4. On September 30, 2024, this Court ordered the trial court to appoint new counsel for Appellant. On October 10, 2024, Appellant was appointed Jedediah H. Lemon, Esq., as appellate counsel who was given until October 30, 2024, to file an amended concise statement. Attorney Lemon sought an extension of time and was given until December 6, 2024, to file the statement. On December 2, 2024, Attorney Lemon filed a docketing statement with this Court which indicated that an **Anders** brief would be filed on appeal. On December 20, 2024, Attorney Lemon filed with the trial court an amended 1925(b) concise statement on Appellant's behalf. The trial court issued an opinion pursuant to Rule 1925(a) on December 20, 2024, and an amended 1925(a) opinion on December 26, 2024. This appeal followed.

After our review, we found that Attorney Lemon failed to comply with the dictates of **Anders** for several reasons. First, he failed to file a statement of intent to withdraw in the trial court. Next, although he sought to withdraw, he failed to file a petition to withdraw with this Court. He also failed to indicate that he sent a copy of the **Anders** brief to Appellant or advised Appellant of his right to retain new counsel or proceed *pro se*. Finally, Attorney Lemon's

brief did not refer to anything in the record that arguably supports the appeal, nor did he cite to the record or to pertinent legal authority.

This Court issued a memorandum remanding the case with instructions. *Commonwealth v. Castello*, No. 1266 MDA 2024, 2025 Pa. Super. Unpub. LEXIS 1177 (Apr. 30, 2025). We directed counsel to either file a petition for leave to withdraw and an *Anders* brief that comply with the requirements, or to file an advocate's brief within twenty days. After receiving no response from Attorney Lemon within thirty days, this Court entered an order on May 30, 2025, directing Attorney Lemon to comply with our April 30, 2025, memorandum. On June 9, 2025, Attorney Lemon complied by filing a petition to withdraw and a new *Anders* brief.

Before we may consider any substantive claims on appeal we must ensure that the petition to withdraw and brief filed by Attorney Lemon are in compliance with *Anders*. In order for counsel to withdraw, he must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d at 349, 361 (Pa. 2009). Counsel also must provide the appellant with a copy of the *Anders* brief, together with a letter that advises the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points

that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007) (citation omitted).

Here, Attorney Lemon has filed a motion for leave to withdraw from representation in this Court. The motion indicates that Appellant was advised of his rights to proceed *pro se* or retain new counsel. Attached is a letter to Appellant stating the same, and indicating that Appellant was provided with the *Anders* brief. The *Anders* brief provides a factual and procedural summary, sets forth Attorney Lemon's conclusion that the appeal is frivolous, and discussed each issue Appellant sought to have raised. Accordingly, Attorney Lemon has complied with *Anders*. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with *Anders* is sufficient).

We will therefore review the issues raised in the *Anders* brief to determine if they have arguable merit. We must then conduct "a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5 (citation omitted); *see also Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (noting that *Anders* requires the reviewing court to "review 'the case' as presented in the entire record with consideration first of issues raised by counsel").

Attorney Lemon has presented one issue for our review: "Whether the trial court erred/abused its discretion?" **Anders** Br. at 2. Attorney Lemon has reproduced the issues in Appellant's 1925(b) statement as follows, verbatim:

1. Error[]s pertaining to Judgment denying motions for post-verdict relief asking for appointment of counsel, arrest of judgement, and a new trial for defendant, as well as objecting to sentence imposition and denial of oral motion for extraordinary relief during withdrawal of counsel/omnibus post-verdict motions and briefs (including evidentiary exhibits/sentencing hearing).

2. Error[]s including unreasonable multiplication of charges which were merged for sentencing purposes but completely reliant upon each other (Resisting arrest, disorderly conduct, and harassment) all based on the same predicate behavior.

3. Both attorneys for Defendant refused to produce exculpatory documentary evidence (including exhibits), stipulated to questionable information (expert testimony), and refused to object to all matters herein mentioned.

4. The court during trial called the allegations facts in error in the presence of the jury which is prejudicial against the defendant.

5. The court [e]rred in not quashing the Defendant's initial arrest for disorderly conduct engaging in fighting and harassment which according to the information is in fact the resisting arrest. Defendant cannot resist an unlawful arrest.

6. The court erred in finding guilt of the Defendant for public drunkenness absent accusations or proof not even produced after the fact.

7. The court erred in finding of guilt of Defendant for criminal mischief absent proof of damage.

8. The court erred in victimization of Trooper Tyler Arbogast as he was acting under color of law, which would essentially make him the Commonwealth. The Commonwealth of Pennsylvania cannot legally be a victim.

9. The court erred in not allowing the presentation of the Defendant's affirmative defense exhibits and documentation including the Defendant's hospital records that show blamelessness and an acute need for medical care, which lasted seventy days.

10. The court erred in not taking into consideration the fact that Attorney Steve Buttorff threatened and coerced Mr. Castello into waiving his preliminary hearing, which the disciplinary board of the Supreme Court has been notified by Defendant.

11. The court erred in allowing witness Deborah Heiss to testify against Defendant and prejudice the jury against him for an incident that was completely unrelated and irrelevant to the instant case.

12. The court erred in not relieving a jury member that was confirmed to be related to witness Deborah Heiss, witness for the Commonwealth.

13. The court and Counsel erred in allowing Trooper Tyler Arbogast to testify as a Drug Recognition Expert only in title not in fact about his assumption that defendant was on drugs absent any corroboration. This act inevitably corrupted the Jury's mental impression of the Defendant unfairly prejudicing him and creating partiality.

*Anders* Br. at 3-5.

Preliminarily, we combine and discuss several issues raised in the *Anders* brief. Issues three, ten, and thirteen concern questions of ineffective assistance of counsel. We decline to address them at this time, as claims of ineffective assistance of counsel generally must be deferred to post-conviction collateral review. *See Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013) (holding that, subject to limited exceptions, claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should

- 7 -

not be reviewed upon direct appeal). The first exception applies to extraordinary circumstances, when a "trial court, in the exercise of its discretion, determines that a claim . . . of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted." *Id.* at 577. The second exception addresses "multiple and fairly common ineffectiveness claims," which are accompanied by the defendant's "knowing, voluntary, and express waiver of [PCRA] review." *Id.* at 577-78, 580. The third exception requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." *See Commonwealth v. Delgros*, 183 A.3d 352, 361 (Pa. 2018). None of the enumerated exceptions apply here. Therefore, Appellant must defer these claims to collateral review. *See id.*; *Holmes, supra*.

> Appellant's first issue reads as follows:
>
> Errors pertain to Judgment's denying motions for Post-Verdict Relief asking for appointment of counsel, arrest of judgement, and a new trial for Defendant, as well as objecting to sentence imposition and denial of oral motion for extraordinary relief during withdrawal of counsel/omnibus post-verdict motions and briefs (including evidentiary exhibits)/sentencing hearing.

*Pro Se* 1925(b), 9/23/24, at 1-2 ¶ 2. This paragraph is incoherent and appears to be a list of procedural requests to which Appellant claims errors pertain. We can discern no specific error alleged in this issue. To the extent this paragraph is meant to reference the denial of Appellant's post-verdict motion, this court has reviewed the transcript of the hearing on the post-verdict

motion in its entirety. The issues Appellant raised at the hearing largely mirror the issues raised in the instant appeal, and he requested that his judgment be arrested and that he be granted a new trial based on the same. *Id.* at 24. The issues Appellant sought to be raised that are cognizable on direct appeal will each be addressed herein. Notably, however, much of Appellant's argument at the hearing on his post-verdict motions implicated the assistance of trial counsel, and he also requested a new trial on that basis. *See* N.T., 8/29/24, at 10, 20, 22, 24, 26-27. The trial court reminded Appellant that those claims are deferred until PCRA proceedings. *Id.* at 10, 20-22, 23, 27, 28-31. Accordingly, to the extent Appellant's first issue implicates the ineffective of counsel, we defer those claims to collateral review.

Appellant's second issue is that his charges were "unreasonabl[y] multipli[ed]" because each charge was reliant on the same underlying behavior, and because several of his charges merged for sentencing purposes. Appellant seems to believe that no more than one offense can arise out of a single criminal episode, or that "merger" of the charges must occur sometime prior to sentencing. Appellant fails to understand that all charges against a defendant that arise out of a single criminal act, occurrence, episode, or transaction are joined in a single prosecution. Upon conviction and solely for sentencing purposes, merger takes place when "crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765.  Here,

Appellant's offenses with overlapping elements properly merged for sentencing purposes. Accordingly, this claim is frivolous.

Appellant's fourth issue is that the trial court judge misspoke in the presence of the jury, causing prejudice to Appellant. Specifically, Appellant contends that the trial court labeled testimony as "facts" rather than "allegations."

> Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.

*Commonwealth v. Grant*, 387 A.2d 841, 844 (Pa. 1978). "The focus is on what, if any, effects the comments had on the jury." *Commonwealth v. Faulkner*, 595 A.2d 28, 39 (Pa. 1991).

Here, during the testimony of Pennsylvania State Police Trooper Tyler Arbogast, the court interrupted to ask if the Commonwealth was seeking to have the trooper qualified as an expert "just before we get into the facts." N.T., 6/11/24, at 43. The court used the term "facts" colloquially, to draw a distinction between the part of the direct examination where the Commonwealth lays a foundation to have the expert qualified and the "narrative" part of the witness' testimony. Nonetheless, the court immediately corrected itself in the next breath:

> THE COURT: Let me interrupt you for a moment. Are you moving to have this witness qualified as an expert?

- 10 -

MR. KERSTETTER: I was going to indicate there was a stipulation to doing that, Judge. But, yes, at this point since you brought it up, I would offer him as an expert in the field of drug recognition.

THE COURT: Just before we get into the facts.

MR. KERSTETTER: Sure.

THE COURT: *Or the allegations*. Mr. Sullivan?

MR. SULLIVAN: No objection.

N.T., 6/11/24, at 43-44 (emphasis added).

Thus, not only did the court immediately correct itself, but Appellant's counsel placed no objection on the record. Additionally, prior to Trooper Arbogast's testimony continuing, the trial court instructed the jury, "you are not required to accept an expert's opinion . . . You may believe all, part or none of the testimony[.]" *Id.* at 44. Moments later, the court explained to the jury what a "stipulation" is and stated that it is the one exception "to the rule where you are the sole judges of the facts[.]" *Id.* at 45. Accordingly, even if the trial court's brief labeling of "allegations" as "facts" had not been cured, it could not have prejudiced the jury when the jury knew its role was to determine the veracity of the "facts" it heard. The jury was told it did not have to believe the trooper's testimony, and "[t]he law presumes that the jury will follow the instructions of the [trial] court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001). Accordingly, this claim fails.

Appellant's fifth issue is that the trial "court erred in not quashing [Appellant's] initial arrest" because he claims it was unlawful.[2] The only appropriate remedy for an allegedly unlawful arrest is the suppression of evidence obtained as a result of that arrest. ***Commonwealth v. Carter***, 643 A.2d 61, 68 (Pa. 1994) ("[A]n illegal arrest is not a bar to subsequent prosecution nor a defense to a valid conviction;" rather, the remedy for an unlawful arrest "is the suppression of the evidentiary fruits of the illegal arrest, not the dismissal of the charges."). As Appellant did not file a motion to suppress evidence based on his purportedly invalid arrest, he has failed to preserve any challenge to the legality of his detention. ***See Commonwealth v. Tiffany***, 926 A.2d 503, 509 n.21 (Pa. Super. 2007) (citations omitted) (claims not raised in suppression motion are waived on appeal). Accordingly, this claim is waived.

Appellant's sixth and seventh issues challenge the sufficiency of the evidence. Our standard of review for challenges to the sufficiency of the evidence is well settled:

> Our standard of review for a challenge to the sufficiency of the evidence is *de novo*, but our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014). Evidence is sufficient if it can support every element of the crime charged beyond a

---

[2] To the extent Appellant would claim as error that his charges for disorderly conduct and harassment stemmed from his behavior while resisting arrest, we refer him to our analysis of his second issue.

reasonable doubt. ***Commonwealth v. Forrey***, 108 A.3d 895, 897 (Pa. Super. 2015); ***Commonwealth v. Vogelsong***, 90 A.3d 717, 719 (Pa. Super. 2014). The trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. ***Commonwealth v. Watkins***, 843 A.2d 1203, 1211 (Pa. 2003).

***Commonwealth v. Robinson***, 128 A.3d 261, 264 (Pa. Super. 2015) (parallel citations omitted).

First, we must determine if Appellant preserved his challenge. To preserve a sufficiency claim, an appellant must "specify the element or elements upon which the evidence was insufficient." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). Failure to conform to this specificity requirement may result in waiver even if the trial court addresses the sufficiency of the evidence. ***Id***. In Appellant's *pro se* 1925(b) statement and in his counseled, amended 1925(b) statement, his sufficiency issues are presented as follows:

> 6. The court erred in finding guilt of the Defendant for public drunkenness absent accusations or proof not even produced after the fact.
>
> 7. The court erred in finding of guilt of Defendant for criminal mischief absent proof of damage.

*Pro Se* 1925(b), 9/23/24, at 2-3; Amended 1925(b), 12/20/24, at 1.

Appellant failed to specify the element or elements of public drunkenness for which he claims no proof was produced. Accordingly, he has waived this claim. However, Appellant specified the element of criminal

mischief of which he contests the sufficiency of the Commonwealth's proof. Accordingly, we will address that claim.

A person is guilty of criminal mischief if he: . . . (5) intentionally damages real or personal property of another[.]" 18 Pa.C.S.A. § 3304(a)(5). Appellant claims that there was no evidence presented at trial that he caused any damage to property. However, Trooper Arbogast testified at trial that during the struggle with Appellant, "my radio was flung from my radio holster, and my one pin on my uniform was ripped off." N.T., 6/11/24, at 60. When asked if either of those items were "damaged beyond use," the trooper replied, "[t]he pistol master pin was, yes." *Id*. The trooper further stated that he needed to get a new pin to replace the damaged one. *Id*. Accordingly, we find that the Commonwealth presented sufficient evidence that Appellant caused damage to the property of another.

Appellant's eighth issue is that the trial court erred in the "victimization of Trooper Tyler Arbogast." Specifically, Appellant seems to believe that while a trooper is acting pursuant to official duties, the trooper is tantamount to the state of Pennsylvania. Without citation, Appellant claims that the Commonwealth of Pennsylvania cannot legally be a victim, and thus an officer could never be the subject of an offense. Appellant's position has no basis in law.

As the trial court notes,

Although not referenced by the Defendant, this statement may have roots in appellate litigation in another context. Under then-

- 14 -

existing statutory definitions, the Pennsylvania Supreme Court ruled that the Commonwealth cannot be a direct victim for purposes of mandatory restitution under 18 Pa.C.S. § 1106. **Com. v. Veon**, 150 A.3d 435, 455 (PA. 2016) ("**Veon II**"). **See also Com. v. Perzel**, 169 A.3d 1138 (Pa. Super. 2017) (unpub.). This ruling would not apply here, and in any event, it was legislatively abrogated by the General Assembly in Act 145 of 2018.

Tr. Ct. Op., 12/26/24, at 5 n.1. Appellant's claim fails as it is legally unfounded.

Appellant's ninth issue is that the court erred in not allowing the presentation of certain documents that Appellant possessed. Specifically, Appellant wished to present hospital records showing that following his arrest, he was hospitalized and received medical care for seventy days. The document advises that Appellant was suffering from "Acute Metabolic Encephalopathy"[3] which can cause brain dysfunction, confusion, memory loss, and personality changes. Appellant's Br. in Support of Motion, 6/20/24, Exhibit D(2). He claims this document, had it been presented at trial, would have proven that he is "blameless" for the behavior that led to his arrest as it was caused by his disorder.

Initially, we reject the premise of Appellant's argument because, while trial courts have broad discretion in admitting or excluding evidence, **Commonwealth v. Schwartz**, 615 A.2d 350, 356 (Pa. 1992), the trial court here did not, in fact, rule Appellant's documents inadmissible. Instead,

---

[3] Appellant admits that a cause of this disorder is use of "street drugs." Appellant's Br. in Support of Motion, 6/20/24, Exhibit D(2).

- 15 -

Appellant complains that his trial attorney told him that his documents would be irrelevant and/or damaging to Appellant's case. N.T., 8/29/24, at 9-10. To the extent Appellant claims ineffective assistance of counsel, we defer this claim for PCRA proceedings.

However, we note that the hospital records show that Appellant tested positive for amphetamine and benzodiazepine. Appellant's Br., 6/20/24, Exhibit E at 14. The document further states, "Amphetamine intoxication most likely cause of AMS [altered medical state][.]" *Id*. The records indicate that Appellant was presented to the hospital with "profound agitation and delirium" and needed to be "sedated to control his agitation." *Id.* at 6. The document states that Appellant had to be treated for an "amphetamine overdose." *Id.* at 7. The report states that it wasn't until the morning following his arrest that Appellant stopped being combative and began cooperating and acting appropriately. *Id.* at 18. Appellant admitted to using methamphetamine on the night in question. *Id*. Under Appellant's "past medical history," the document states that beginning in 2005, Appellant started using "alcohol," "pills," "heroin," and "methamphetamines." *Id.* at 32. Each of these facts corroborates the arresting officers' testimony, and the document provides direct evidence to satisfy several elements of the crimes with which Appellant was charged. Accordingly, there is an objective, reasonable basis why Appellant's trial counsel would decline to present this document.

Appellant's eleventh and twelfth issues each pertain to Commonwealth witness Deborah Heiss, so we will address them together. First, Appellant claims that the testimony of Mrs. Heiss should have been excluded as irrelevant and prejudicial to him. Second, he claims that a juror should have been excused because the juror had a familial relation to Mrs. Heiss.

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. Even evidence that merely advances a material act may be relevant and admissible. **Commonwealth v. Johnson**, 160 A.3d 127 (Pa. 2017); Pa.R.E. 401. "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." **Commonwealth v. Reid**, 99 A.3d 470, 493 (Pa. 2014).

Here, Mrs. Heiss testified that she was the person who made the 911 call leading to Appellant's arrest. N.T., 6/11/24, at 31. She testified that on the night in question, she saw Appellant roaming around in the parking lot where she and her husband had parked their car to go to a restaurant. **Id.** at 29. After she and her husband got in their car and began to drive away, someone rattled the door handle as if they were trying to get into the locked car. She testified that she did not clearly see the person who grabbed their car door handle. **Id.** at 32. She identified Appellant in court as the man she

saw walking around the parking lot, *id.*, but admitted that she did not know if Appellant was the person who grabbed the door handle. *Id.* at 34.

Mrs. Heiss' testimony was relevant because it (1) served to identify Appellant as the man in the parking lot, and (2) explained why the police were called to the parking lot in which they arrested Appellant on the night in question. Appellant claims that her testimony prejudiced him because it suggested that he was breaking into cars in that parking lot. We note three things: First, Appellant did not object to this testimony at trial and thus, in addition to this issue being waived, the trial court could not have abused its discretion in allowing testimony that no party sought to exclude. Second, to the extent Appellant would claim his counsel was ineffective for failing to object to this testimony, Appellant's trial counsel cross-examined Mrs. Heiss to clarify that she could *not* identify Appellant as the man who touched her car door handle. Finally, Appellant was not accused of attempting to break into any cars and was not charged with any offense related to such behavior. Accordingly, Appellant's claim is meritless.

Appellant also claims that a juror should have been excused because the juror admitted familial relation to Mrs. Heiss. "The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Commonwealth v. Carter*, 643 A.2d 61, 70 (Pa. 1994). Our Supreme Court has set forth the standard for prospective juror disqualification as follows:

The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. . . . It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. . . . A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

*Commonwealth v. Briggs*, 12 A.3d 291, 333 (Pa. 2011). We employ the same analysis whether a question arises about a juror's impartiality before or during trial. *Commonwealth v. Pander*, 100 A.3d 626, 632 (Pa. Super. 2014) (*en banc*). Also, we note that "a finding regarding a venireman's impartiality 'is based upon determinations of demeanor and credibility that are peculiarly within a trial [court]'s province. . . [Its] predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record.'" *Commonwealth v. Smith*, 540 A.2d 246, 256 (Pa. 1988).

Here, once Appellant's trial counsel brought to the trial court's attention that juror number 66 advised the tipstaff that she knew a witness, the court held a sidebar. N.T., 6/11/24, at 111. The juror told the court that she has a distant relation to Mrs. Heiss; the Heisses are the juror's grandmother's sister's brother and his wife. *Id.* at 112. She indicated that she hadn't spoken to them in probably twenty years. *Id*. The juror also stated that this would not affect her ability to be fair and impartial, *id.*, and that trial court found the

- 19 -

juror's responses "unreserved" and credible. Tr. Ct. Op., 12/26/24, at 6. We discern no abuse of discretion. The court determined, based on the juror's conduct, demeanor, and responses, that the familial relationship between the juror and the witness was not a close relationship and that there would be no bias or prejudice. Accordingly, Appellant's claim fails.

Finally, Appellant's thirteenth issue claims that the court erred in allowing Trooper Tyler Arbogast to testify as a Drug Recognition Expert. The qualification of a witness as an expert rests within the sound discretion of the trial court, and the court's determination in this regard will not be disturbed absent an abuse of discretion. *See Commonwealth v. Serge*, 837 A.2d 1255, 1260 (Pa. Super. 2003). As stated by this Court:

> The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. *Commonwealth v. Wallace*, 2002 PA Super 367, 817 A.2d 485 (Pa. Super. 2002). . . . A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on training and experience. *Id.*

*Commonwealth v. Malseed*, 847 A.2d 112, 114 (Pa. Super. 2004) (quoting *Serge, supra.*).

Initially, we note that Appellant did not object to this trooper testifying as an expert. Accordingly, he has waived this claim. However, to the extent that Appellant would claim his counsel was ineffective for failing to object to this witnesses' admission as an expert, we find a reasonable, objective basis for why counsel would decline to object.

- 20 -

Trooper Arbogast's training at the Pennsylvania State Police Academy included eighty to 100 hours of identifying individuals who may be under the influence of alcohol or a controlled substance. N.T., 6/11/24, at 38. Following graduation from the academy, he received an estimated 200 hours of training directly targeted towards indicators of impairment by controlled substances and alcohol. *Id.* at 39. The trooper was accepted into and attended Drug Recognition Expert School after completing the prerequisite courses. *Id*. He was required to pass an exam identifying the intoxicant of live subjects under the influence of methamphetamine, heroin, PCP, or marijuana. Finally, he obtained a perfect score on a several-hour, written exam, resulting in him becoming a certified drug recognition expert. *Id.* at 40. He has experience effectuating over 200 DUIs. *Id.* at 41.

Accordingly, while a witness does not *need* a formal education to be rendered an expert on a subject, Trooper Arbogast is quite literally a certified expert on drug recognition who attended and passed "Drug Recognition Expert School." Appellant's trial counsel reasonably concluded that because of this trooper's extensive training and specialized knowledge on the subject of drug recognition, no objection to the Trooper's qualification could be credibly made. Accordingly, Appellant's argument is meritless.

Furthermore, after conducting our independent review pursuant to *Yorgey, supra*, we discern no non-frivolous issues to be raised on appeal. Therefore, because each of Appellant's issues were meritless, waived, or

legally unfounded, we grant Attorney Lemon's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>07/14/2025</u>